**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

                                                 **Plaintiff,**

                    **v.**                                                 **1:09-CR-29**
                                                                             **(GLS)**

**JOSEPH L. BRUNO,**

                                                 **Defendant.**
_____

**APPEARANCES:**                           **OF COUNSEL:**

**FOR THE UNITED STATES:**

HON. ANDREW T. BAXTER             ELIZABETH C. COOMBE
United States Attorney                   WILLIAM C. PERICAK
James T. Foley U.S. Courthouse      Assistant U.S. Attorneys
445 Broadway
Albany, NY  12207

**FOR DEFENDANT:**

McDermott, Will Law Firm               ABBE D. LOWELL, ESQ.
600 13th Street, NW
Washington, DC  20005

Dreyer, Boyajian Law Firm              WILLIAM J. DREYER, ESQ.
75 Columbia Street
Albany, NY  12210

**Gary L. Sharpe**
**District Court Judge**
                                        **Decision and Order**

## I. **Introduction**

The defendant Joseph L. Bruno, a former New York Senate Majority Leader and 43rd Legislative District Senator, has been charged in an eight count indictment with mail and wire fraud. The indictment alleges that Bruno engaged in a scheme to defraud New York's citizens of their intangible right to his honest services by failing to disclose conflicts of interest and by failing to make disinterested decisions when performing his official duties. (*See* Indictment, Dkt. No. 1; *see also* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), 1346 (scheme to defraud as including intangible right of honest services.))

Bruno has filed motions seeking the following relief: (1) dismissal of the indictment because (a) it is unconstitutionally vague, (b) it is unconstitutionally vague as applied, (c) it violates federalism principles; (d) it violates the statute of limitations; and (e) it resulted from an improper grand jury charge (*see* FED. R. CRIM. P. 12; *see also* Bruno Motions and Reply, Dkt. Nos. 22-24, 32); (2) an order requiring the government to file a bill of particulars responding to thirty-eight specific requests (*see* FED. R. CRIM. P. 7(f); *see also* Bruno Motion, Dkt. No. 15); (3) an order striking surplusage from the indictment because it is (a) prejudicial and

2

inflammatory, or (b) related to events outside of the statute of limitations (*see* FED. R. CRIM. P. 7(d); *see also* Bruno Motions and Reply, Dkt. Nos. 16, 19, 32); and (4) an order striking the forfeiture allegations in the indictment because they violate his due process rights (*see* FED. R. CRIM. P. 7(c)(2); *see also* Bruno Motion, Dkt. No. 25).  Bruno seeks a stay of the impending trial scheduled for November 2, 2009, because the Supreme Court has granted certiorari in a similar case.  (*See* Lowell Ltrs., Dkt. Nos. 39, 44.)  The government has filed a single response to all motions, and has opposed the stay.  (*See* Gov't Motion Response, Dkt. No. 28; Coombe Ltr., Dkt. No. 41.)  Bruno has filed a reply, and a response to the government's opposition to the stay.  (*See* Dkt. No. 32, 37, 39, 44.)

For the reasons that follow, all motions and the requested stay are denied.

## II. Background

As relevant to Bruno's arguments, the indictment was filed on January 23, 2009, and alleges that he engaged in an honest services fraudulent scheme from 1993 through 2006.  While it alleges various acts in furtherance of that scheme that clearly predate the mail and wire fraud five year statute of limitations, the actual charges allege mail and wire use

within the statutory period.

The indictment extensively details allegations that Bruno schemed to defraud New York citizens of their right to his honest services by failing to engage in disinterested decision-making when performing his official duties and by failing to disclose conflicts of interest.  For example, the indictment alleges that his decision-making was influenced when he took official actions benefitting private interests in exchange for unearned remuneration of $3 million dollars.  It alleges that he violated his ethical obligations under New York's Public Officers Law when he failed to disclose material conflicts of interest, accepted other employment that impaired his independent judgment and official duties, used his official position to secure unwarranted privileges, took unauthorized gifts that were intended to influence him, and failed to disclose these conflicts on required annual financial disclosure forms.  Under the Public Officers Law, such violations are punishable as crimes.

As it relates to his request for a bill of particulars, the indictment is detailed and his access to the government's file has been extensive.

**III.  <u>Dismissal of the Indictment and Stay of the Trial</u>**

   **A.  History of 18 U.S.C. §1346, Vagueness and Federalism**

4

"The courts have recognized two principal theories of honest services fraud in cases involving public officials: fraud based on a public official's acceptance of a bribe and fraud based on a public official's failure to disclose a material conflict of interest." *United States v. Kincaid-Chauncey*, 556 F.3d 923, 942 (9th Cir. 2009). "Until 1987, federal courts read both statutes [(§§1341 & 1343)] to criminalize not only schemes for obtaining money or property, but also schemes to deprive another of the intangible right of honest services." *United States v. Rybicki*, 354 F.3d 124, 133 (2d Cir. 2003) (internal citation and quotation marks omitted). Thereafter, in *McNally v. United States*, 483 U.S. 350 (1987), the Supreme Court held that "all schemes or artifices to defraud relating to intangible rights to good government, honest services, privacy - indeed all things other than money or property - were...beyond the mail fraud proscriptions." *Rybicki*, 354 F.3d at 134.

The following year, Congress enacted §1346 in response to *McNally* and reinstated the intangible rights doctrine which states:

> For the purposes of this chapter [18 U.S.C. §1341 et seq.] the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

*See* 18 U.S.C. § 1346 (quoted in *Rybicki*, 354 F.3d at 134).  The Second

Circuit has categorized honest services fraud cases as either "bribery" or

"self-dealing."  *Rybicki*, 354 F.3d at 139-41.  While the Second Circuit has

not definitively said that this categorization applies to public officials, it has

clearly intimated as much.  *Rybicki*, 354 F.3d at 138-39 ("To determine

what Congress intended when it recriminalized 'honest services' fraud, we

have reviewed the principal pre-McNally decisions involving or purportedly

involving 'honest services' fraud in the private sector.  The meaning of the

phrase 'scheme or artifice to defraud' with respect to public corruption

cases is not at issue in the matter before us, and, although we have been

given no reason to doubt that it is susceptible to a similar mode of analysis,

we do not consider it.").

Before the passage of §1346, the Second Circuit held that individuals

who in reality or effect were the government owed a fiduciary duty to the

citizenry.  *See United States v. Margiotta*, 688 F.2d 108, 125 (2d Cir.

1982), *overruled on other grounds by McNally*, 483 U.S. 350.  After

*McNally*, in *United States v. McDonough*, 56 F.3d 381, 391 (2d Cir. 1995),

a former Democratic Committee County Chairman was convicted, *inter

alia,* of mail fraud when he failed to disclose and concealed "information

6

about the kickback scheme that he had a duty to disclose."

Insofar as Bruno attacks the facial validity of §1346, this contention fails since the Second Circuit has already held that §1346 is not vague on its face.  *See Rybicki*, 354 F.3d at 144.  Accordingly, to the extent that Bruno argues that §1346 is vague on its face, the law in this Circuit is contrary to his view and his motion is denied.

Nonetheless, *Rybicki* directs that cases such as this need to be analyzed for vagueness "'as applied,' i.e., 'in light of the specific facts of the case at hand.'" *Id.* at 129 (internal citation omitted).  However, Bruno's contention that §1346 as applied is unconstitutional is also without merit. As the government correctly points out, Bruno failed to disclose material conflicts of interest and related material information.  Moreover, an ordinary person could understand that (1) it was wrong for a fiduciary, including a public official, to conceal or fail to make such disclosures and that (2) §1346 prohibits schemes to do so.  Accordingly, Bruno's motion to dismiss because §1346 is vague as applied is also denied.

Bruno further argues that the indictment should be dismissed

7

because it violates federalism principles.[1]  Bruno's argument, in part, is

premised on the position that the government must allege and prove an

underlying state violation.  However, this is not the law in the Second

Circuit or in the majority of Circuits to have addressed the issue. *See*

*Margiotta*, 688 F.2d at 124 (rejecting contention that absent a showing of a

violation of New York statute or a duty imposed by New York law, a

defendant may not be found guilty of using the mails in furtherance of a

scheme to defraud on the basis of a breach of a fiduciary duty to the

citizenry); *see also United States v. Weyhrauch,* 548 F.3d 1237, 1244

(collecting Circuit cases stating as much).

Furthermore, as the government correctly points out, it is immaterial

that there is disagreement among the circuits regarding whether

materiality, as opposed to reasonably foreseeable harm, must be proven.

The Second Circuit has held that the materiality test applies.[2]  S*ee Rybicki,*

354 F.3d at 145-46.  Since the current law in the Circuit does not support

---

[1]The federalism argument is premised on the notion that the federal government is prohibited from regulating the ethical conduct of state officials acting in their official capacity.

[2]Materiality is an element of the offense which must be proven at trial. *See Rybicki*, 354 F.3d at 146 ("Materiality test...has the virtue of arising out of fundamental principles of the law of fraud").

8

his arguments, Bruno's motion to dismiss based on federalism principles is denied.

In the context of his federalism argument, Bruno alternatively seeks a stay of his trial because the issue of whether the government must prove a state law violation will soon be addressed by the Supreme Court.  *See Weyhrauch v. United States*, 129 S. Ct. 2863 (2009).  As the government correctly points out, the grant of certiorari does not create new law. Accordingly, this court will adhere to the settled law of this Circuit as it stands today.  *See Tinaway v. Merrill Lynch & Co., Inc.,* 661 F.Supp. 937, 944 (S.D.N.Y. 1987) (adhering to the settled law of the day and declining to speculate as to what the Supreme Court may do at some future date). Moreover, even if the Supreme Court overturned the majority view and decided that a state law violation must be proven, the government has alleged a state law violation and intends to offer proof in support of that allegation.  Because the law of this Circuit is clear and because the court declines to speculate on what the Supreme Court might do, Bruno's motion for a stay is denied.

## B.  Statute of Limitations

Bruno argues that the indictment - or at least some portions of it - is

9

subject to dismissal on statute of limitations grounds. A statute of limitations is a statute of repose, whose function is to bar stale claims, i.e., claims asserted after "evidence has been lost, memories have faded, and witnesses have disappeared." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). "A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period." *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) (internal citations omitted).

"The statute of limitations is a defense ..., not a rule of evidence.... [It] has no bearing on the admissibility of evidence." *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir. 1975). "[T]he prior act evidence adduced...went directly to establishing [defendant's] intent, as well as the preparations and plans that went into the scheme to defraud,... and such evidence is admissible even though it antedates the limitations period." *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) (internal citation omitted). "A suggestion that the evidence is too old goes to its relevance and to its weight. Any question as to the weight to be accorded a relevant document is a matter for the jury." *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992).

10

The substantive mail and wire fraud counts in the indictment are within the statute of limitations. Other conduct that predates the statute of limitations is alleged to have been part of the scheme to defraud. Whether that conduct is ultimately relevant and admissible and whether it will be sufficient to prove the existence of a scheme to defraud are trial issues. There is no violation of the statute of limitations, and Bruno's motion to dismiss on this basis is denied.

## C. Grand Jury Charge

Bruno seeks an order compelling the government to disclose the grand jury charge, and speculates that if the charge is as he believes, the indictment is subject to dismissal. Thus, he contends that if the Model Grand Jury Charge adopted by the Federal Judicial Conference in March of 2005 was used, the charge is constitutionally flawed.[3] If on the other hand, the actual charge differs from the Model, he seeks permission to further brief this issue. Bruno's arguments are without merit, his motion is denied, and the court declines to permit further briefing.

The grand jury's decision to indict or not is unreviewable in any forum; its decision is final. *See Costello v. United States*, 350 U.S. 359,

---

[3]Parenthetically, the majority of courts in this country use the Model Charge.

11

362-63 (1956).  The grand jury is a constitutional fixture in its own right, and belongs to none of the three branches of government.  *See United States v. Williams*, 504 U.S. 36, 47 (1992).  A grand jury is a protector of citizens against arbitrary and oppressive governmental action.  *See United States v. Calandra*, 414 U.S. 338, 343 (1974).

Moreover, the secrecy of grand jury proceedings is fundamental to the criminal justice system.  *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).  "The regularity of grand jury proceedings in the federal system is presumed and the burden of proving regularity does not shift to the government merely because the defendant makes unsupported claims on a motion attacking the indictment."  *United States. v. Greenberg*, 204 F. Supp. 400, 402 (S.D.N.Y. 1962) (citing *United States v. Johnson*, 319 U.S. 503, 513 (1943)); *see also United States v. Nunan*, 236 F.2d 576 (2d Cir. 1956).  Even if the court were to assume that the Model Charge was used, the Model Charge is constitutional, *see United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir. 2005) and *United States v. Knight*, 490 F.3d 1268 (11th Cir. 2007), and as mentioned, the grand jury is presumed regular.

## IV.  <u>Bill of Particulars</u>

12

Bruno seeks an order compelling the government to file a bill of
particulars responding to thirty-eight specific requests.  "The court may
direct the government to file a bill of particulars."  FED. R. CRIM. P. 7(f).  The
decision to do so is discretionary.  *See United States v. Walsh*, 194 F.3d
37, 47 (2d Cir. 1999).  The function of a bill of particulars is to provide the
defendant with information about the details of the charge if necessary to
the preparation of his defense or to avoid prejudicial surprise at trial.  *See
United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (citing 1 CHARLES
ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 129 (2d ed. 1982) and
*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).  A bill of
particulars should be required only where the charges in the indictment are
so general that they fail to advise the defendant of the specific acts of
which he is accused.  *See United States v. Chen*, 378 F.3d 151, 163 (2d
Cir. 2004).  Acquisition of evidentiary detail is not the function of a bill of
particulars.  *See Torres*, 901 F.2d at 234 (internal citation omitted).  While
the function is not to provide evidentiary detail or the theory of prosecution,
particulars should be ordered if necessary to give the defendant enough
information about the charge to prepare his defense even if it results in
disclosure of evidentiary detail and theories.  *See United States v. Barnes*,

13

158 F.3d 662, 665 (2d Cir. 1998).  Where the government has made

sufficient disclosures concerning its evidence and witnesses through other

means such as discovery, a bill of particulars is not required.  *See Chen*,

378 F.3d at 163.

Bruno's motion for a bill of particulars is denied.  The indictment

recites substantial details such that Bruno is conversant with the

allegations he faces, and he has had ample access to the government's

files.  What he truly seeks is evidentiary detail without the required showing

that he is unable to prepare his defense.  Lastly, the court notes that

Bruno's motion papers reflect a complete understanding of the allegations

in the indictment such that he is able to mount a defense.

## V.  Surplusage

Bruno moves to strike allegations in the indictment because they are

outside the statute of limitations and may confuse the jury, and moves to

strike certain words or phrases as prejudicial and inflammatory.

Federal Rule of Criminal Procedure 7(d) allows the court to exercise

its discretion and strike surplusage from an indictment.  A motion to strike

should be granted "only where the challenged allegations are not relevant

to the crime charged and are inflammatory and prejudicial."  *United States*

*v. Mulder*, 273 F.3d 91, 99-100 (2d Cir. 2001) (quoting *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990)).  There are two distinct elements to the inquiry; namely, relevance and prejudice.  Thus, the degree of prejudice is generally of no moment if the allegation is relevant and admissible. *See Scarpa*, 913 F.2d at 1013.  Motions to strike surplusage, however, are held to an "exacting standard."  See *id.* (citing 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 127, at 426 (2d ed. 1982)).  Courts in this Circuit have noted that "[i]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *See id.* (quoting *United States v. DePalma*, 461 F.Supp. 778, 797 (S.D.N.Y. 1978)).

    As earlier noted, the motion addresses two distinct issues.  First, Bruno renews his statute of limitations argument in the guise of a motion to strike.  Thus, he argues that certain allegations of fraudulent conduct have no direct bearing on any of the charged mail and wire fraud counts, and thus will prejudicially inflame and confuse the jury.  (*See* Bruno Motion, Dkt. 16 at p.3-10.)  Secondly, he takes umbrage with the government's draftsmanship, arguing that certain language is prejudicially inflammatory.  For instance, he challenges the statement that he supplied New Yorkers

15

with "dishonest services", and decries the use of the phrase, "sham invoices" in a description of his fraudulent scheme. (S*ee id.*, at p. 10-12.)

As stated earlier when discussing the statute of limitations, evidence concerning the breadth and scope of the scheme to defraud will certainly be admissible at trial, if relevant. That is an evidentiary decision that must be made at the time. Moreover, both prongs of the motion ignore fundamental legal propositions. It is axiomatic that an indictment is merely an allegation and proof of nothing. The court routinely instructs the jury on this point. Secondly, there is nothing in the law that requires submission of the indictment to the jury. While the court may elect to do so, the ultimate decision to submit it in its entirety, or in some redacted form, will depend on the nature of the trial evidence when the time comes for making that decision. Accordingly, Bruno's motion to strike is denied.

## VI. **Forfeiture Allegations**

Bruno moves to strike the forfeiture allegation because it fails to identify the specific property that the government believes is subject to forfeiture. Bruno concedes that the law in this Circuit is contrary to his position; namely, the government need not identify specific property to satisfy Rule 7(c)(2)'s notice requirement. This court declines to depart from

well-established Second Circuit law and thus, the motion to strike the

forfeiture allegations is denied.  *See United States v. Grammatikos,* 633

F.2d 1013, 1024 (2d Cir. 1980) (explaining that the plain language of Rule

7(c)(2) requires only that the extent of the interest or property subject to

forfeiture be alleged).

     Based upon the foregoing, it is

     **ORDERED** that all motions and the request for a stay are denied;

and it is further

     **ORDERED** that the Clerk provide copies of this Decision and Order

to the parties.

**IT IS SO ORDERED**.

Dated:     **August 21, 2009**
         **Albany, New York**

_____
United States District Court Judge

17