**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---------------------------------------------------- x

UNITED STATES OF AMERICA        :

                                    :   09-CR-29 (GLS)

       v.                           :

                                      :

JOSEPH L. BRUNO,           :

                                      :

      Defendant.         :

                                      :

---------------------------------------------------- x

<br>

## <u>DEFENDANT JOSEPH L. BRUNO'S</u><br><u>TRIAL BRIEF</u>

<br>

Abbe David Lowell, Bar Number 106642
Paul M. Thompson
Christopher D. Man
McDermott Will & Emery LLP
600 13th Street, NW
Washington, DC 20005
Phone: 202-756-8001
Facsimile: 202-756-8087
adlowell@mwe.com

William J. Dreyer, Esq.
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210
Phone: 518-463-7784
Facsimile: 518-463-4039

*Attorneys for Defendant Joseph L. Bruno*

PLEASE TAKE NOTICE that defendant Joseph L. Bruno, through undersigned counsel, hereby submits the following trial brief.

## INTRODUCTION

As Mr. Bruno has previously set forth in various motions, the federal charge of "theft of honest services" is in a state of flux. From the time the Supreme Court rejected the doctrine in *McNally v. United States*, 483 U.S. 350, 356 (1987), to the time Congress attempted to cure the problem of defining a vague charge, to the ongoing struggles that various courts have had in deciphering the parameters of the law, honest-services-fraud prosecutions raise numerous issues in the context of providing a defendant with fair notice and other requirements of due process, as well as respecting the federal government's limited authority to regulate state issues.

The state of flux may be resolved relatively soon, given that the Supreme Court has agreed to rule on two cases that raise various challenges to 18 U.S.C. § 1346, the federal honest-services-fraud statute. *See Black v. United States*, No. 08-876 (pending); *Weyhrauch v. United States*, No. 08-1196 (pending). In fact, the Court has scheduled argument for both of these cases on December 8, 2009, close in time to the trial of this matter. Mr. Bruno sought not only to have the charges filed in this case dismissed on grounds similar to those before the Supreme Court, but also asked that this Court stay the trial so that it and the parties could be better informed of whether these charges can be maintained and what evidence and instructions might be required.[1] The Court declined to do so. Litigating in the shadow of what is likely to be a major change or major clarification of the law governing this very type of case, then, Mr. Bruno brings to the

---

[1] In recognition of the Supreme Court's upcoming intervention in this area, other courts have stayed action on honest-services-fraud cases pending the Court's eventual decision. *See, e.g.*, *United States v. Inzunza*, Nos. 05-50902 & 05-50960, --- F.3d ----, 2009 WL 2750488 (9th Cir. Sept. 1, 2009) (following circuit precedent to uphold honest-services-fraud conviction but staying mandate pending Supreme Court's disposition of *Weyhrauch*).

Court's attention a variety of trial issues, particularly in light of the specific manner in which the government has charged this case. At the very least, if this case is tried to conclusion before the Supreme Court rules, Mr. Bruno seeks to insure that as much certainty as possible, based on the clearest current law, is applied to the trial, so that the parties will know what evidence is admissible and how the jury will be instructed.

## THE CHARGES

In evaluating the government's case, it is critical to first recognize what the government has *not* charged. After years of investigation, the government cannot and does not allege that Mr. Bruno solicited or received any bribes or illegal gratuities. There are no allegations that he took kickbacks, engaged in threats or extortion, or misappropriated either federal or state funds. Indeed, even though the government's Indictment alleges Mr. Bruno's involvement in an elaborate scheme spanning fifteen years and involving a host of unrelated parties, the government does not even allege that Mr. Bruno engaged in an unlawful conspiracy or orchestrated a racketeering scheme, nor has it named others as co-defendants or co-schemers.

Rather, what the government has decided to do is target what it alleges to be Mr. Bruno's nondisclosure of his part-time private employment as a consultant. The prosecution's eight charges thus distill to a central, repeated complaint: that Mr. Bruno, by not specifying the clients of his consulting firms (Business Consultants and Capital Business Consultants) and/or those clients' interests, violated the federal honest-services-fraud statute by failing to disclose either conflicts of interests arising out of or gifts he received relating to those interests. *See* Indictment at ¶¶ 33 (complaining of alleged nondisclosures relating to Wright Investors' Service), 40 (same, relating to McGinn, Smith), 57 (same, relating to Fassler, Abbruzzesse, and Ball Companies);

*see also* Gov't Omnibus Mem. of Law, Dkt. No. 28, at 12–16 (arguing that nondisclosure is punishable under Section 1346; citing, *inter alia*, *Weyhrauch*).

This brief sets forth a series of legal and evidentiary issues that the Court should bear in mind while evaluating the government's efforts to prove its charges against Mr. Bruno beyond a reasonable doubt.

## TRIAL ISSUES

**I.    The Role of State Law**

As Mr. Bruno previously argued, the government can only maintain a prosecution under Section 1346 upon proof that the defendant first violated some duty imposed upon him under relevant state law, specifically a state criminal law—Section 1346 does not create a federal common law of state-level political ethics. *See, e.g.*, *United States v. Brumley*, 116 F.3d 728 (5th Cir. 1997). Whether the Supreme Court will make this a requirement in all honest services cases or not, it is nevertheless a requirement in *this* case, because the government relied on specific state law violations in the Indictment and presented that theory to the grand jury. *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("[T]he indictment must be considered as it was actually drawn, not as it might have been drawn."). The government has therefore made state law—specifically, the New York Public Officers Law—central to its prosecution of this case. Indictment at ¶¶ 4–9. By basing the Indictment upon these specific state statutes, the government made a decision that controls this case—the government must now prove what it has charged, by showing both the applicability of the state statutes to Mr. Bruno's conduct *and* that Mr. Bruno violated them. *See* Bruno Prop. Jury Ins. Nos. 6–12. Failure to require as much would permit the government to potentially convict Mr. Bruno based on conduct never demonstrated to the grand jury, amounting to an improper constructive amendment of the

Indictment in violation of his Fifth and Sixth Amendment rights.  *See, e.g., United States v. Salmonese*, 352 F.3d 608, 619 (2d Cir. 2003) (alteration of a charge during trial can be a *per se* violation of the Constitution).

  The government's incorporation of state law, however, raises a host of problems.  As Mr. Bruno explained in his pretrial motions, the government's theory of the case transforms what are most likely civil offenses under state law into federal felonies, with a dramatic effect on the punishment available as a result.  Of the three state-law violations alleged by the government— conflicts of interest, improper gifts, and nondisclosure—the first carries *no* potential criminal penalty under New York law.  N.Y. Pub. Off. Law § 74(4).  The remaining two are also invariably punished only through civil remedies, with minor criminal sanctions available only upon a referral by the state ethics committee.  N.Y. Pub. Off. Law §§ 73(18), 73-a(4) (violations of the gift and nondisclosure statutes punishable as class A misdemeanor only upon referral).  And the language used in the gift statute has been held unconstitutionally vague, under both the federal and New York Constitutions.  *See People v. Moore*, 85 Misc. 2d 4, 377 N.Y.S.2d 1005 (1975).  Thus, after three years of painstaking investigation, the government has justified its efforts only by taking state law violations with minor penalties, adding boilerplate allegations regarding the use the federal mails or wires, and transforming those minor offenses into federal felonies punished by years and years of incarceration.  The state legislature itself made clear that it never envisioned such a result, particularly because it specifically prohibited prosecution for such offenses in federal court, N.Y. Pub. Off. Law § 73-a(4) ("Notwithstanding any other provision of law to the contrary, no other penalty, civil or criminal may be imposed" for violation of nondisclosure statute), and only made the most extreme offenses a class A misdemeanor, N.Y. Pub. Off. Law §§ 73(18), 73-a(4).

Furthermore, the prosecution's focus on state law may distract from the fact that proof of a state law violation is only the *beginning* of an honest-services-fraud prosecution, not its ending. In addition to showing violation of state law, the government must also prove, beyond a reasonable doubt, the other elements of a federal fraud—including, but not limited to, a specific intent to defraud the public through a scheme or artifice. *See United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007) ("[T]he 'scheme to defraud clause . . . requires that the defendant engage in . . . a pattern or course of conduct designed to deceive . . . ."); *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006) (stating that the "scheme to defraud" language "itself demands a showing that the defendant possessed a fraudulent intent[.]"); *see also* Bruno Prop. Jury Ins. Nos. 4, 11, 13, 14.

Mr. Bruno requests the Court keep the government to the charges it brought, by making as clear as possible to the jury that it cannot convict unless it first finds that Mr. Bruno violated the state law charged and, then, finds that the government has proven beyond a reasonable doubt all of the additional elements of the federal honest-services-fraud statute.

## II.    The General Nature of the "Scheme to Defraud"

The government has attempted to buttress its case through reference to a wide swath of historic conduct, old enough such that any criminal charges based directly upon it would be time-barred. This Court already ruled that whether this conduct is relevant or admissible will be an issue at trial. August 21, 2009, Order, Dkt. No. 48, at 11. With that ruling, the Court recognized that the arguable relevance of this conduct will turn, in part, on whether the government sticks to the theory of the case that it presented in the Indictment. Having charged the existence of a single "scheme to defraud" spanning fifteen years and involving a host of unrelated persons, entities, and organizations, the government must now prove that such a widespread plan existed.

If it instead seeks to establish that Mr. Bruno's scheme was more limited in scope, viewing what it would then allege to be multiple schemes in isolation, then the government will have, once again, impermissibly changed its theory at trial from the theory by which it obtained its Indictment. *See Salmonese*, 352 F.3d at 619 (alterations amount to either a prohibited constructive amendment or variance). Such an amendment would also eliminate any arguable basis for allowing evidence of Mr. Bruno's time-barred alleged conduct from being introduced or discussed at trial. The historic allegations are either relevant to a fifteen-year scheme that the government must now be required to prove, or irrelevant to any more-limited theory and must be excluded at trial.

Furthermore, perhaps in awareness of the difficulties created by its theory of the case, the government has steadfastly avoided providing a clear statement of the exact misconduct that it alleges Mr. Bruno has engaged in furtherance of his alleged "scheme to defraud." To be sure, the government has listed a variety of potential state-law offenses, as discussed above. And it has identified a variety of Mr. Bruno's consulting employments that were allegedly improper, including his union-related work for McGinn, Smith and Wright Investment Services, as well as his employments relating to what it calls the "Fassler Companies," "Abbruzzese Companies," "Ball Companies," and Asentinel. But the government fails to articulate exactly what alleged misconduct it believes relates to each of these employments. Mr. Bruno therefore requests that the government, before trial, be forced to finally articulate which theories it is pursing with respect to each employment, *i.e.*, it must explain, count-by-count, whether the charge is based on nondisclosure of a conflict of interest or nondisclosure of a gift. Then, at trial, it must prove each theory, beyond a reasonable doubt, as it relates to the specific charges. This issue will be addressed in a motion in limine to be filed next week.

III.    **Specific Issues Relating to Mr. Bruno's Alleged Misconduct**

Within the framework of a single alleged scheme, involving a wide variety of Mr.

Bruno's alleged conduct over the past fifteen years, the government has alleged generally that

Mr. Bruno, by making false statements in his Annual Statements of Financial Disclosure,

concealed either illegal conflicts of interest or illegal gifts. Therefore, to prove its charges

against Mr. Bruno, the government must establish, with respect to each count of the Indictment,

both (1) the existence of some conflict or gift, in violation of the relevant sections of the New

York Public Officer Law, and (2) that Mr. Bruno concealed these conflicts and/or gifts through

false statements in his Annual Statements of Financial Disclosure, in violation of Public Officer

Law § 73-a.

This portion of the trial brief highlights legal and evidentiary issues raised under each of

these elements, which affect both the nature of what the government must attempt to prove at

trial and the admissibility of evidence therein.

A.    <strong>Conflicts of Interest—Pub. Off. Law. § 74</strong>

1. <u>Actual and Substantial Conflict of Interest</u>: Before there can be any failure to disclose

a conflict of interest, there must first be an actionable conflict of interest. Like many of New

York's ethical requirements, Section 74's prohibition against conflicts of interest is designed to

prohibit even the appearance of corruption, and therefore is broader than necessary to bar only

actual conflicts of interest or actual official misconduct. *Nicholas v. Kahn*, 47 N.Y.2d 24, 32

(1979) (purpose of New York Code of Ethics is "to prevent even the appearance of the slightest

taint of impropriety"). While such a broad sweep may be allowed for general ethics rules, that is

not so when the rules become criminal, and this is especially true when such general rules are

purportedly engrafted into a federal prosecution. Section 1346 requires an actual violation of a

duty to provide honest services—the mere appearance of impropriety cannot support a conviction under any of the Indictment's counts. *Brumley*, 116 F.3d at 734 ("It follows that a violation of state law that prohibits only appearances of corruption will not alone support a violation of §§ 1343 and 1346."); *United States v. Sawyer*, 85 F.3d 713, 728 (1st Cir. 1996) (discussing relationship between Section 1346 and violations of "prophylactic civil prohibition[s] that address[] appearances of—but not actual—corruption"). As a result, at trial the jury should be instructed, and the government must prove, that Mr. Bruno's private employment created an *actual* conflict of interest, rather than only that it created the mere appearance of impropriety. *See* Bruno Prop. Jury Ins. Nos. 15–18.

The vehicle for this requirement might be the fact that, under the New York Public Officers Law, the government must establish that any actual conflict of interest was in "substantial conflict with the proper discharge of his duties in the public interest." N.Y. Pub. Off. Law § 74. To establish this element of the conflict-of-interest statute—as well as the similar federal requirement that the defendant engage in "material" misrepresentations—the government must prove that Mr. Bruno's alleged conflicts of interest had some effect upon his official decisionmaking, *i.e.*, that he took official acts based on his alleged conflict. *See, e.g.*, *United States v. Kemp*, 500 F.3d 257, 283 (3d Cir. 2007) (honest services fraud embraces "a situation where a public official conceals a financial interest in violation of a state criminal law *while taking discretionary action* that the official knows will directly benefit the individual or organization behind that financial interest") (emphasis added); *United States v. Panarella*, 277 F.3d 678, 695 (3d Cir. 2002) (same); *Sawyer*, 85 F.3d at 728 (describing two types of honest services fraud cases, (1) "in which an official was bribed," and (2) "in which an official . . . *took official action based on a secret conflict of interest*") (emphasis added); *see also* N.Y. Pub. Off.

Law § 74(3)(a) (no legislator should accept other employment which "*will impair* his

independence of judgment in the exercise of his official duties" (emphasis added)); *see also*

Bruno Prop. Jury Ins. No. 16.  The government's argument to the contrary, *see* Dkt. No. 28 at

39–40 and Gov't Prop. Jury Ins. No. 15, is based on bribery opinions that are inapposite to

nondisclosure-based honest-services-fraud prosecutions like this case.

2.  Relationship of Conflict Statute to Honest Services Fraud:  As noted above, New York

state law imposes *no* criminal penalties for violations of the conflict-of-interest statute.  As a

result, even a violation of the conflict-of-interest rule, standing alone, cannot serve as the

predicate for a Section 1346 conviction.  *See United States v. Kemp*, 500 F.3d 257, 283 (3d Cir.

2007); *Brumley*, 116 F.3d at 734 (reserving issue).  Mr. Bruno therefore asks that the elements of

the state laws cited be made part of the jury instructions in this case, and that the relationship

between these alleged state violations and the federal charges be carefully explained.  *See* Bruno

Prop. Jury Ins. Nos. 6, 15.

**B.      Improper Gifts—Pub. Off. Law. § 73(5)**

1.  Definition of "Gift":  Although the Indictment charges that Mr. Bruno received

improper gifts in violation of New York state law, the government has failed to identify a single

stand-alone "gift" that he allegedly received.  Rather, the government first claims that even

though the alleged "gifts" were given to Mr. Bruno as payment either for goods or services

rendered and were reported as such on his Annual Statements of Financial Disclosure, the

payments constituted "gifts" because "Mr. Bruno did not perform legitimate commensurate with

the payments" he received.  *See* Indictment at ¶¶ 7, 44, 51, 55.

Before it even reaches the issue of whether Mr. Bruno failed to disclose any gifts, the

Court should reject the government's sleight of hand.  A federal criminal trial is hardly the forum

- 9 -

to calculate the precise amount of "legitimate" salary that should attach to consulting work. Nor should the government be able to transform properly accepted and reported income into illegal "gifts" merely by asserting individual prosecutors' opinion that the income received was more than the services provided warranted. Absent some allegation that the payments were in fact illicit, given and received with an actual intent to corruptly influence Mr. Bruno's official decisionmaking, the government should be required to accept the conventional understanding of the payments. The payments were compensation for employment, as Mr. Bruno reported—and the government should be held to its burden of proving that this employment was in some way improper by proving that it was the intent of the giver and of Mr. Bruno to provide and receive an improper gift, not merely by arguing that, in some retrospective manner, the government believes the payments were excessive. As part of this requirement, the jury should be instructed that part-time employment is allowed and legal for New York State legislators and require the government to prove its allegations that Mr. Bruno actually accepted gifts. *See* Bruno Prop. Jury Ins. Nos. 17, 19, 20.

    2. Limited Construction of the Gift Statute: In addition, the government may seek not just to label Mr. Bruno's reported income as gifts, but to then suggest that, under state law, the gifts were illegal. To do this, the government may rely on Paragraph 7 of the Indictment, that Mr. Bruno could be found to have violated state law if he solicited or accepted any gifts "under circumstances in which it could reasonably be inferred that the gift was intended to influence him, or could reasonably be expected to influence him, in the performance of his official duties or was intended as a reward for any official action on his part." If so, the Court must reject the government's arguments as a matter of law.

The only New York state court to consider the issue has concluded that this language—

as used in a parallel New York City municipal ethics law with the same words—is

unconstitutionally vague, as it fails to provide sufficient guidance regarding the boundaries of

circumstances in which it could be "reasonably inferred" or "expected" that a gift was improper.

*See Moore*, 85 Misc. 2d 4, 377 N.Y.S.2d 1005.[2]  As a result, the government cannot rely upon

this invalidated language at trial.  Otherwise, the theory could allow conviction and punishment

for violation of a standard of conduct that is not consistent with the Due Process Clause.

Consequently, Mr. Bruno requests that the unconstitutional portions of the Indictment as written

not be read or even summarized to the jury and that the government be precluded from

introducing evidence on that unconstitutional theory.  This issue will be addressed in a motion in

limine to be filed next week.

    3.  Relationship of Gift Statute to Honest Services Fraud:  Even if the government

establishes that Mr. Bruno violated some valid New York state gift statute, it has not necessarily

proven a violation of the federal honest services law.  Like the existence of a conflict of interest,

the violation of a gift or gratuity statute, standing alone, does not establish a violation of Section

1346.  *See Brumley*, 116 F.3d at 734 ("[T]he mere violation of a gratuity statute, even one closer

to bribery than the [state] statute, will not suffice."); *Sawyer*, 85 F.3d at 728 ("[U]nlike the

honest services fraud cases, noted above, in which an official was bribed or took official action

based on a secret conflict of interest, a gift statute violation, even if intentional, does not in itself

amount to honest services fraud.").  Rather, the government must also establish both that Mr.

Bruno violated New York's state laws regarding false disclosure, *see infra*, and the additional

---

[2] Although the *Moore* Court evaluated the constitutionality of the gift ban in General Municipal Law § 805-a(1)(a), rather than that in Public Officers Law § 73(5), the operative language is identical.

elements of federal honest services fraud—specific intent to create a scheme to defraud, materiality, and use of the federal mails or wires in furtherance of the alleged fraud, *see United States v. Rybicki*, 354 F.3d 124, 145 (2d Cir. 2003). Mr. Bruno therefore requests that the Court specifically explain to the jury that it must find more than just a violation of state law to convict Mr. Bruno, and that it hold the government to its burden of proving the additional elements of federal honest services fraud. *See* Bruno Prop. Jury Ins. No. 6.

### C.    Failure to Disclose Information—Pub. Off. Law. § 73-a

As noted above, the government's central theory of its case is that, by listing his consultancy firms "Business Consultants" or "Capital Business Consultants" as his source of income in his Annual Statements of Financial Disclosure, instead of those entities' clients, customers, or individuals who owned those clients or customers, Mr. Bruno was "concealing, disguising, and failing to disclose the existence and nature" of his financial relationships with the various entities for whom his firm provided consulting services. *See* Indictment at ¶ 18. Thus, it is not enough for the government to merely prove that Mr. Bruno's part-time employment created conflicts of interest or lead him to receive improper gifts. Rather, as it specifically charged in the Indictment, the government must also establish that Mr. Bruno *failed to disclose* any such alleged conflict or gift.

The government cannot be permitted, however, to invent new disclosure obligations out of thin air. Rather, the government must explain, with reference to New York Public Officer Law § 73-a, *what* Mr. Bruno was required to disclose, *where* he was required to disclose it, and *how* he was expected to be aware of this requirement. Section 73-a does more than establish general disclosure obligations—it specifically mandates the exact contents of the annual disclosure forms, including the questions asked and the instructions provided to legislators in the

law itself.  In many cases, these specific instructions state not only what information *should* be

disclosed, but also what *should not* be included.  Particularly relevant to this case, the

instructions included as part of the Annual Financial Disclosure Statement Form—the contents

of which are dictated by state law, *see* N.Y. Pub. Off. Law § 73-a(3)—have specific provisions

that indicate that the names of clients and customers should *not* be included in any answers on

the disclosure forms.  *See* Questions 8(a), 13.  Therefore, to convict Mr. Bruno, the government

will have to show how Mr. Bruno's failure to disclose additional information that is *not*

requested under the specific statute that defines his state disclosure obligations can serve as the

basis for a federal criminal case.[3]

The government cannot maintain this ambiguity through trial.  Rather, part of its case

must be a requirement that the government defines what Mr. Bruno was supposed to disclose,

how he was supposed to know that, and where that obligation arose.  If the government fails to

prove, beyond a reasonable doubt, that Mr. Bruno was required to make such disclosures, then

the government cannot prove that he violated Section 73-a.

### D.    Specific Intent

1.  Existence of Multiple Intent Requirements:  Running throughout the government's

charges against Mr. Bruno are a series of multiple, overlapping-but-distinct intent requirements.

*First*, several of the state ethics laws the government claims Mr. Bruno violated include a

---

[3] The government raises a series of similar objections regarding the so-called Fassler, Abbruzzese, and Ball companies: specifically, that Senator Bruno was doing undisclosed work on behalf of some such companies while other such companies were pursuing unidentified "interests" before the New York Legislature. *See, e.g.*, Indictment at ¶¶ 41–45 (allegations as to Fassler companies).  Yet the government offers no explanation for what Senator Bruno was supposedly required to disclose under the alleged circumstances—for example, the name of a firm client, such as Ameridata?  The names of all that client's shareholders, including Mr. Fassler?  Each shareholder's percentage of ownership?  The government offers no limiting principle establishing what degree of disclosure would be sufficient to avoid prosecution.

specific intent requirement—the government is required to prove that Mr. Bruno intentionally violated the state ethics statutes. *See, e.g.*, N.Y. Pub. Off. Law §§ 73(18) (acceptance of forbidden gift only punishable if done "knowingly and intentionally"), 73-a (false statement in disclosure form only punishable if made "knowingly and willfully"); *Lightbody v. Russell*, 45 N.Y Sup. 15, 17 (N.Y. Sup. 1943) ("Doing or omitting to do a thing knowingly and willfully, implies not only a knowledge of the thing, but a determination with a bad intent to do it or to omit doing it."); *see also* Bruno Prop. Jury Ins. No. 9. *Second*, the New York state disclosure law includes an additional, more specific limitation—any false statement on a disclosure form must be made not only "knowingly and willfully" but also "with [an] intent to deceive." *See* Bruno Prop. Jury Ins. No. 10. *Finally*, Section 1346 imposes its own separate intent requirement—"the 'scheme to defraud clause . . . requires that the defendant engage in . . . a pattern or course of conduct designed to deceive[.]" *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007); *see also United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006) (The "scheme to defraud" language "itself demands a showing that the defendant possessed a fraudulent intent."); *see also* Bruno Prop. Jury Ins. No. 4.

Those courts that have upheld Section 1346 in the face of vagueness challenges have done so because of strict application of these intent requirements. *See, e.g.*, *United States v. Sorich*, 523 F.3d 702, 711 (7th Cir. 2008) (holding that specific intent requirement undercuts argument that Section 1346 is unconstitutionally vague). Thus, the government must be held to its burden to prove beyond a reasonable doubt both (1) that Mr. Bruno intentionally violated his disclosure requirements under state law, and, in addition, (2) that Mr. Bruno intentionally devised an elaborate scheme to defraud the public through such nondisclosures, as charged in the

Indictment to constitute a federal offense. The jury should also be instructed regarding the differences between these intent requirements. *See* Bruno Prop. Jury Ins. No. 11.

2. Relevant Evidence: In light of the specific intent requirements imposed by both state and federal law, Mr. Bruno cannot be convicted unless the government proves beyond a reasonable doubt that his annual disclosures were made with the knowing and willful intent to deceive. As a result, there will be various pieces of additional evidence that will be relevant to the question of Mr. Bruno's intent.

*First*, the Court must consider the reasonableness of Mr. Bruno's beliefs that his disclosures complied with applicable law, including, in part, whether Mr. Bruno's answers accord with the types of disclosures made by his fellow legislators. Mr. Bruno's compliance with custom is relevant both to the question of whether he breached any disclosure duty and to whether he did so with any criminal intent. *See United States v. Hurn*, 368 F.3d 1359, 1364 (11th Cir. 2004) ("[T]he existence of the custom . . . was itself relevant to the *mens rea* element of the offense. That is, if the defendant was acting pursuant to an established, authorized custom, then he was not intentionally doing anything wrong."); *United States v. Sheffield*, 992 F.2d 1164, 1170 (11th Cir. 1993) (reversing conviction for exclusion of evidence of custom because "[e]vidence of the gift making custom was probative of the material question of Mr. Sheffield's intent, his state of mind"); *see also* Bruno Prop. Jury Ins. Nos. 12, 25.

*Second*, the Court must also consider the disclosure instructions provided to Mr. Bruno by the disclosure forms and related guidance materials. Even if the Court concludes that Mr. Bruno's disclosures were incomplete, compliance with such instructions is evidence of his good-faith efforts to comply with the law. Such good faith is a complete defense to the government's charges. *United States v. Alkins*, 925 F.2d 541, 550 (2d Cir. 1991) ("Since an essential element

- 15 -

of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of fraud. A defendant has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt."); *see also* Bruno Prop. Jury Ins. Nos. 24, 25.

*Third*, the Court must consider Mr. Bruno's good faith efforts to follow the advice of counsel regarding his ethical obligations. *See United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997). The government has indicated it intends to call as witnesses various state employees who were also attorneys. This raises the issue of what these attorneys said and did, implicating Mr. Bruno's compliance with their advice as evidence of Mr. Bruno's lack of criminal intent and his good faith. *See* Bruno Prop. Jury Ins. No. 26.

*Finally*, the Court must not consider any extrinsic-act evidence when evaluating Mr. Bruno's intent, as required by Federal Rule of Evidence Rule 404(b). Although such evidence can, in certain circumstances, be used as evidence of intent, *see* Fed. R. Evid. 404(b), the government here specifically disclaimed any intention to introduce such evidence. *See* Dkt. No. 32 at Ex. A. As a result, all such evidence must be excluded at trial. This issue will be addressed in a motion in limine to be filed next week.

## CONCLUSION

This case is scheduled to be tried during a time in which the legal underpinnings of all of the government's charges are being reviewed by this nation's highest Court, and in which the Supreme Court's decision is likely to change, at the very least, what evidence and legal instructions govern such prosecutions—if such cases will even be allowed to be brought in the future. Accordingly, there is even more reason than generally exists in any criminal case to

require that the government sticks to the charges it brought, does not vary from those charges, and is clear about what theories it seeks to pursue.

Respectfully submitted,

_s/ Abbe David Lowell_____
Abbe David Lowell, Bar Number 106642
Paul M. Thompson
Christopher D. Man
McDermott Will & Emery LLP
600 13th Street, NW
Washington, DC 20005
Phone: 202-756-8001
Facsimile: 202-756-8087
adlowell@mwe.com

William J. Dreyer, Esq.
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210
Phone: 518-463-7784
Facsimile: 518-463-4039

*Attorneys for Defendant Joseph L. Bruno*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
------------------------------------------------------- x
                                                        :
UNITED STATES OF AMERICA                                :
                                                        :
        v.                                              :
                                                        :    Case No. 09-CR-29 (GLS)
JOSEPH L. BRUNO,                                        :
                                                        :
        Defendant.                                      :
                                                        :
------------------------------------------------------- x

## CERTIFICATE OF SERVICE

        I hereby certify that on October 5, 2009, I electronically filed the foregoing with the
Clerk of the District Court using the CM/ECF system, which sent notification of such filing to
the following:

1.      Andrew T. Baxter, Esq.
        Acting United States Attorney
        Office of the United States Attorney – Albany
        445 Broadway
        218 James T. Foley U.S. Courthouse
        Albany, NY 12207-2924

2.      Elizabeth C. Coombe, Esq.
        Assistant U.S. Attorney
        Office of the United States Attorney – Albany
        445 Broadway
        218 James T. Foley U.S. Courthouse
        Albany, NY 12207-2924

3.      William C. Pericak, Esq.
        Assistant U.S. Attorney
        Office of the United States Attorney – Albany
        445 Broadway
        218 James T. Foley U.S. Courthouse
        Albany, NY 12207-2924

                                            _____/s Abbe David Lowell_____