UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————
UNITED STATES OF AMERICA,  :
                           :    Crim. No. 09-CR-029
          v.               :    (Hon. Gary L. Sharpe)
                           :
JOSEPH L. BRUNO,           :
                           :    **GOVERNMENT'S**
          Defendant.       :    **TRIAL MEMORANDUM**
                           :
———————————————————————

## TABLE OF CONTENTS

Statement of the Case . . . . . . . . . . . . . . . . . . . . . 1

Relevant Law . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The Statutes and Elements of the Charged Offenses . . 1

    B.   Failure To Disclose A Material Conflict of Interest
        Violates Both Federal and New York Law . . . . . . . . 2

    C.   New York Statutes Declare and Complement
        The Common Law . . . . . . . . . . . . . . . . . . . . 6

Evidentiary Issues . . . . . . . . . . . . . . . . . . . . . . 10

    A.   Admissibility of Relevant New York Law . . . . . . . 10

    B.   Records of Regularly Conducted Activity . . . . . . . 12

    C.   801(d)(2)(E) Co-conspirator Statements . . . . . . . 14

    D.   Admission of Statements to a Journalist, and the
        Journalist's Privilege . . . . . . . . . . . . . . . 16

    E.   The Admission of Grand Jury Testimony As Substantive
        Evidence . . . . . . . . . . . . . . . . . . . . . . 19

    F.   Evidence of Prior "Good Acts" Is Not Admissible . . 20

**Trial Issues** . . . . . . . . . . . . . . . . . . . . . . **22**

    **A**    The Government May Impeach Its Witnesses . . . . . . **22**

    **B.**    On Direct Examination, The Government May Elicit
        Evidence of Pleas, Cooperation Agreements, Orders of
        Statutory Immunity, and Pending Charges . . . . . . **23**

    **C.**    Bifurcation of Forfeiture Proceeding . . . . . . . . **25**

TABLE OF CASES

FEDERAL CASES

Crawford v. Washington, 541 U.S. 36 (2004)    20

Crocker v. United States, 240 U.S. 74 (1916)    4

Gonzalez v. National Broadcasting Co., Inc., 194 F.3d 29 2d Cir.
1999)    17

Michoud v. Girod, 45 U.S. 503 (1846)    4

Major League Baseball Properties v. Salvino, Inc., 542 F.3d 290
(2d Cir. 2008)    14

Pan-American Petroleum & Transport Co. v. United States, 273 U.S.
456 (1927)    5

Phoenix Associates III v. Stone, 60 F.3d 95 (2d Cir. 1995)    13

Price v. Thurmer, 514 F.3d 729 (7th Cir. 2008)    25

Toney v. Burris, 829 F.2d 622 (7th Cir. 1987)    10

United States v. Beecroft, 608 F.2d 753 (2d Cir. 1979)    13

United States v. Benedetto, 571 F.2d 1246 (2d Cir. 1978)    21

United States v. Blackwood, 456 F.2d 526 (2d Cir. 1972)    24

United States v. Brechtel, 997 F.2d 1108 (5th Cir. 1993)    11

United States v. Brennan, 798 F.2d 581 (2d Cir. 1986)    20

United States v. Brockenborrugh, 575 F.3d 726 (D.C. Cir. 2009)    15

United States v. Bruno, 2009 WL 2601249 (N.D.N.Y. 2009)    2

United States v. Carter, 217 U.S. 286 (1910)    5

United States v. Cosentino, 844 F.2d 30 (2d Cir. 1988)    23

United States v. Doyle, 130 F.3d 523 (2d Cir. 1997)    21

United States v. Eisen, 974 F.2d 246 (2d Cir. 1993)                    22

United States v. Foxworth, 2009 WL 1582923 (2d Cir. 2009)              2

United States v. Gewin, 471 F.3d 197 (D.C. Cir. 2006)                 15

United States v. Hasenstab, 575 F.2d 1035 (2d Cir. 1978)             24

United States v. Jacoby, 955 F.2d 1527 (11th Cir. 1992)         13, 14

United States v. James, 609 F.2d 36 (2d Cir. 1979)                   20

United States v. Jennings, 487 F.3d 564 (8th Cir. 2007)             10

United States v. Keane, 522 F.2d 534 (7th Cir. 1975)                11

United States v. Kearns, 595 F.2d 729 (D.C. Cir. 1978)               5

United States v. Koppers Co., Inc., 652 F.2d 290 (2d Cir. 1981)      24

United States v. Marchand, 564 F.2d 983 (2d Cir. 1977)          19, 22

United States v. McElroy, 910 F.2d 1016 (2d Cir. 1990)              11

United States v. McNeil, 728 F.2d 5 (1st Cir. 1984)                 24

United States v. Melenedez, 2006 WL 1379624 (S.D.N.Y. 2006)         20

United States v. Miles, 480 F.2d 1215 (2d Cir. 1973)                25

United States v. Milton, 8 F.3d 39 (D.C. Cir. 1993)                 19

United States v. Paccione, 949 F.2d 1183 (2d Cir. 1991)             21

United States v. Parker, 364 F.3d 934 (8th Cir. 2004)               10

United States v. Parks, 68 F.3d 860 (5th Cir. 1995)                 10

United States v. Postal, 589 F.2d 862 (5th Cir. 1979)               15

United States v. Reyes, 157 F.3d 949 (2d Cir. 1998)                 13

United States v. Rothman, 463 F.2d 488 (2d Cir. 1972)               24

United States v. Russo, 302 F.3d 37 (2d Cir. 2002)                  15

United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003)          1

United States v. Scarpa, 913 F.2d 993 (2d Cir.1990)          21

United States v. Schmitt, 748 F.2d 249 (5th Cir. 1984)          10

United States v. Singh, 628 F.2d 758 (2d Cir. 1980)          23

United States v. Thai, 29 F.3d 785 (2d Cir. 1994)          22

United States v. Treacy, 603 F. Supp. 2d 670 (S.D.N.Y. 2009)   18

United States v. Treacy, 603 F. Supp. 2d 670 (S.D.N.Y. 2009)   18

United States v. Williams, 205 F.3d 23 (2d Cir. 2000)          13

United States v. Williams, 737 F.2d 594 (7th Cir. 1984)          20

United States v. Zackson, 12 F.3d 1178 (2d Cir. 1993)          23

### STATE CASES

Beebe v. Supervisors of Sullivan County, 19 N.Y. Supp. 629 (N.Y. App. Div. 1892)          4

Horace Waters & Co. v. Gerard, 189 N.Y. 302 (1907)          7

Landau v. Percacciolo, 412 N.Y.S.2d 378 (N.Y. App. Div. 1978)   4

Landau v. Percacciolo, 50 N.Y.2d 430, 429 N.Y.S.2d 566 (1980)   3

Meinhard v. Salmon, 249 N.Y. 458 (1928)          4

Nichols v. Kahn, 47 N.Y.2d 24, 416 N.Y.S.2d 565 (1979)          8

Opinion of the Justices to the Senate, 376 N.E.2d 810 (Mass. 1978)          9

People ex rel Schenectady Illuminating Co. v. Board of Supervisors of Schenectady County, 151 N.Y.S. 1012 (N.Y. App. Div. 1915)          5

People v. Lynch, 674 N.Y.S.2d 894 (N.Y. Co. Ct. 1998)          6

Smith v. City of Albany, 61 N.Y. 444 (1875)          3, 7

Tuxedo Conservation & Taxpayers Association v. Town Board Of Town of Tuxedo, 418 N.Y.S.2d 638 (N.Y. App. Div. 1979)          3, 6, 7

Zagoreos v. Conklin, 491 N.Y.S.2d 358 (N.Y. App. Div. 1985)   6, 7

## STATEMENT OF THE CASE

Defendant Joseph L. Bruno is charged with eight counts of honest services mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343 & 1346.  The indictment also seeks forfeiture.

## RELEVANT LAW

### A.    The Statutes and Elements of the Charged Offenses

The honest services mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, & 1346, state, in applicable part:

> Whoever, having devised . . . any scheme or artifice to defraud . . . to deprive another of the intangible right of honest services . . . for the purpose of executing such scheme or artifice or attempting so to do, [mails or transmits by wire communications in interstate commerce] [is guilty of a crime].

To obtain a conviction, the government must prove beyond a reasonable doubt that:

1.  the defendant devised "a scheme or artifice to defraud,"

2.  "for the purpose of depriving another of the intangible right of honest services,"

3.  the scheme involved a material misrepresentation or omission; and

4.  "use of the mails or interstate wires in furtherance of the scheme."

United States v. Rybicki, 354 F.3d 124, 145-46 (2d Cir. 2003) (in banc)(citation omitted).

The Government's Proposed Jury Instructions, filed on May 22, 2009, provide additional statements of the law and citations

to other relevant authorities. Since those instructions were filed, the Second Circuit issued a summary order in United States v. Foxworth, 2009 WL 1582923 (2d Cir. 2009), which further supports the following two instructions: (1) Government Instruction 6 n. 10 (Breach (by Omission) of Affirmative Duty to Disclose Material Information): Foxworth, 2009 WL 1582923, at *2 (omission was failure to disclose $3,000 that a public official received from the "briber" to "pressure" or "coerce" parties seeking state funds to give briber the business), and (2) Government Instruction 8 nn. 12 & 13 (Definition of "Material"): Foxworth, 2009 WL 1582923, at *2 (applying definition of material specifically to situation involving state legislator, explaining that "a misrepresentation or omission is 'material' if it 'ha[s] the natural tendency to influence or [is] capable of influencing [the public at large and such relevant decisionmakers as are members of the public to] change [their] behavior") (brackets in original) (quoting Rybicki).

## B. Failure To Disclose A Material Conflict of Interest Violates Both Federal and New York Law.

As this Court noted, the indictment alleges that "Bruno failed to disclose material conflicts of interest and related material information . . . [and] it was wrong for a fiduciary, including a public official, to conceal or fail to make such disclosures." United States v. Bruno, 2009 WL 2601249, at *3

(N.D.N.Y. 2009).  In this Circuit, a public official's duty to make such disclosure is a matter of federal law, and no state law violation need be alleged or proven.  <u>Id.</u> at *3.  Like the federal law, New York law requires public officials, as fiduciaries, to make full and complete disclosure of conflicts of interest.

As recognized under New York common law, a public official owes a fiduciary duty of loyalty and "may not entertain an interest adverse to that of his principal nor may he obtain an advantage for himself from a transaction entered into by his principal, unless with the knowledge and consent of the latter." <u>Landau v. Percacciolo</u>, 50 N.Y.2d 430, 436-37, 429 N.Y.S.2d 566, 569 (1980); <u>see id.</u> (public official is fiduciary who owes duty of loyalty that agent owes principal); <u>Smith v. City of Albany</u>, 61 N.Y. 444, 445 (1875) (common council members were "agents of the city" and each member "was under such an obligation of absolute loyalty to the interests of the city as prohibited any member of the board from entering into any arrangement with his associates by which his individual interest could come in conflict with the interests of his constituents"); <u>Tuxedo Conservation & Taxpayers Ass'n v. Town Bd. Of Town of Tuxedo</u>, 418 N.Y.S.2d 638, 640 (N.Y. App. Div. 1979) ("'A trustee is held to something stricter than the morals of the market place.  Not

honesty alone, but the punctillo of an honor the most sensitive, is then the standard of behavior.'  This statement was written with reference to a fiduciary, but it should apply as well to public servants.")(quoting Meinhard v. Salmon, 249 N.Y. 458, 464 (1928); Landau v. Percacciolo, 412 N.Y.S.2d 378, 384 (N.Y. App. Div. 1978), aff'd, 50 N.Y.2d 430 (1980) ("The relationship between a municipality and its servants springs from the fiduciary roots of agency, a concept deeply embedded in the common law.  Michoud v. Girod, 45 U.S. 503, 555 [(1846)]; Crocker v. United States, 240 U.S. 74, 79-80 [(1916)].");  People ex rel Schenectady Illuminating Co. v. Board of Supervisors of Schenectady County, 151 N.Y.S. 1012, 1013 (N.Y. App. Div. 1915) ("'The illegality of such contracts does not depend upon statutory enactments.  They are illegal at common law.'") (quoting Beebe v. Supervisors of Sullivan County, 19 N.Y. Supp. 629 (N.Y. App. Div. 1892)).

As a fiduciary, a public official is required to make full disclosure of conflicting interests.  Landau, 412 N.Y.S.2d at 384-85 ("The fiduciary character of the agency relationship permits the agent no interest adverse to the principal (Restatement, Agency 2d § 389) and demands that the agent make full disclosure of any such interest to the principal (Restatement, Agency 2d, § 381, comment d, p. 184 [further

-4-

citations omitted] even though the principal may waive his right to object. (Restatement, Agency 2d, §§ 390, 391)."); Mechem, Public Officers, § 839 (1890) (for both public and private fiduciaries, "[p]ublic policy therefore demands and the law declares that, except with the full knowledge and consent of his principals, the agent shall not in the execution of his trust deal with or for himself.")

The common law has long recognized that a conflict exists when a fiduciary "takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure." United States v. Carter, 217 U.S. 286, 306 (1910).  The common law rule applies not only to direct relationships between the private interest of the public official and the official business transacted by the public official, but also to indirect relationships.  See Pan-American Petroleum & Transport Co. v. United States, 273 U.S. 456, 500 (1927) (conflict of interest where Secretary of Interior participated in negotiations of oil and gas leases with two companies after Secretary had received $100,000 loan from individual who controlled the two companies); United States v. Kearns, 595 F.2d 729, 731-34 (D.C. Cir. 1978) (conflict of interest requiring disclosure where president of federal agency sold personal stock holdings to company having extensive dealings

-5-

with his agency).

Like these federal cases, which articulate the common law, New York cases recognize that conflicts of interest arise from both direct and indirect interests. See People ex rel Schenectady Illuminating Co., 151 N.Y.S. at 1014 (conflict of interest where county official, who had no involvement in county's contract to buy lamps from company, was also officer of company selling lamps); Zagoreos v. Conklin, 491 N.Y.S.2d 358, 364 (N.Y. App. Div. 1985) (requiring disqualification where decisive votes in favor of zoning application were cast by two public officials who were employed by applicant; "the likelihood that their employment by [applicant] could have influenced their judgment is simply too great to ignore.); Tuxedo Conservation, 418 N.Y.S.2d at 640 (conflict of interest where town board member was vice-president of advertising agency bidding for contract and whose clients included parent corporation of company which applied to town board to build residential units; "the question reduces itself into one of interest. Was [the public official's] vote prompted by the 'jingling of the guinea' or did he vote his conscience as a member of the town board? In view of the factual circumstances involved, the latter possibility strains credulity."); People v. Lynch, 674 N.Y.S.2d 894, 898-99 (N.Y. Co. Ct. 1998) (public official guilty of official misconduct in

violation of N.Y. Penal Law § 195.00(2) where he voted to "approve the paid services of an insurance consultant and contracts with insurance providers" with whom the official had an agreement to share 25% of commissions).

**C. New York Statutes Declare and Complement The Common Law.**

New York, like every other state, has enacted statutes addressing public officials' conflicts of interest, but such statutes are "simply declaratory" of the common law, and do not "encroach" on it. Smith, 61 N.Y. at 447 (after describing scope of duty of loyalty by quoting from Story, Agency §§ 210, 211 (6th ed. 1863), court noted that statute on same subject "has not wrought a change in the rule referred to; it is, so far as it goes, simply declaratory of the law as it existed previous to its passage. It does not encroach upon the common law, and is not, therefore, to be construed strictly."); Tuxedo Conservation, 418 N.Y.S.2d at 640 ("On behalf of [the public official] it is urged that he did not violate section 809 of the General Municipal law, which forbids certain specified conflicts of interest. Be that as it may, while the anathema of the letter of the law may not apply to his action, the spirit of the law was definitely violated. And since his vote decided the issue we deem it egregious error."); Zagoreos, 491 N.Y.S.2d at 363 (although not prohibited by state conflict of interest statute, votes on

-7-

application for zoning variance by members of Zoning Board of Appeals who were also employees of applicant constituted conflict of interest which invalidated vote).[1]

Here, New York's conflict of interest statute, complementing the common law, prohibits both direct and indirect interests which are in substantial conflict with the proper discharge of a public official's duties:

> Rule with respect to conflicts of interest. No officer or employee of a state agency, member of the legislature or legislative employee should have any interest, financial or otherwise, direct or indirect, or engage in any business or transaction or professional activity or incur any obligation of any nature, which is in substantial conflict with the proper discharge of his duties in the public interest.

N.Y. Pub. Off. Law § 74(2).

In enacting Public Officer's Law § 74, New York recognized that "Government is and should be representative of all the people who elect it, and some conflict of interest is inherent in any representative form of government," but (consistent with the common law disclosure rule), declared that "the people are

---

[1]These decisions, which apply the common law where the conduct does not violate a specific statute, accord with the general rule that the common law survives unless overruled. See Horace Waters & Co. v. Gerard, 189 N.Y. 302, 309 (1907) ("The principles and rules of organized society found in the English common law, so far as applicable to our conditions, became and continue in force, unless abrogated or modified by express constitutional or statutory enactments. Constitutions and statutes should be construed with reference to the doctrines of the common law.")

-8-

entitled to know that no substantial conflict between private interests and official duties exists in those who serve them." N.Y. Pub. Off. Law § 74 (Declaration of intent); see Nichols v. Kahn, 47 N.Y. 2d 24, 32, 416 N.Y.S.2d 565, 570 (1979) (N.Y. Pub. Off. Law § 74 declares the "public policy of the State - to prevent even the appearance of the slightest taint of impropriety from infecting the decision-making process in our government").

Other New York statutes which complement the common law are also relevant to this action. See N.Y. Pub. Off Law § 74(3)(a) (prohibiting a legislator from "accept[ing] other employment which will impair his independence of judgment in the exercise of his official duties"); N.Y. Pub. Off Law § 74(d)(3) (prohibiting a legislator from "us[ing] or attempt[ing] to use his official position to secure unwarranted privileges or exemptions for himself or others"); N.Y. Pub. Off. Law § 73(5) (prohibiting a legislator from receiving gifts of more than $75 "under circumstances in which it could reasonably be inferred that the gift was intended to influence him or could reasonably be expected to influence him, in the performance of his official duties or was intended as a reward for any official action on his part").

In addition to statutes which seek to prohibit conflicts of interest, New York also requires legislators to "file an annual

-9-

statement of financial disclosure containing the information and in the form set forth" in the statute.[2]  N.Y. Pub. Off. Law § 73-a, subd. 2; see also N.Y. Leg. § 80 1989); N.Y. Leg. Ethics Committee Form 1.  Disclosure statutes such as these typically require particular types of information which might be expected to expose possible conflicts of interest.  E.g., Opinion of the Justices to the Senate, 376 N.E.2d 810, 820-21 (Mass. 1978).[3]

## EVIDENTIARY ISSUES

### A.  Admissibility of Relevant New York Law

This Court may take judicial notice of both New York statutes and New York common law.  See Toney v. Burris, 829 F.2d

---

[2]Two of New York's relevant statutes – the $75 gift prohibition and the financial disclosure requirement – are punishable as Class A misdemeanors.  See Indictment ¶¶ 7, 8.

[3]The government will also offer evidence to show defendant (1) was aware of SEC Rule 206-(4)-3, 17 C.F.R. § 275.206(4)-3(a)(2) (which he discussed with others and had an obligation to follow because of accessorial liability principles);(2) had a contractual obligation to comply with the Rule; and (3) took actions regarding compliance with and/or avoidance of the rule in connection with the scheme while soliciting union officials. As discussed in detail in the Government's May 22, 2009 Omnibus Memorandum of Law, at 52-54, this evidence is admissible on the issue of intent.  See United States v. Parker, 364 F.3d 934, 941-42 (8th Cir. 2004) (testimony regarding scope and substance of FTC franchise rule was relevant to intent to deceive in mail fraud prosecution where defendant's employer was subject to franchise rule and defendant, who knew he was selling franchises, was aware of rule's obligations); United States v. Parks, 68 F.3d 860, 866 (5th Cir. 1995) ("Evidence of violations of civil banking regulations cannot be used to establish criminal conduct . . . [but] may, however be admitted for the limited purpose of showing . . . motive or intent to commit the crime charged.") (internal citations omitted).

622, 626 (7th Cir. 1987) ("Federal courts must take judicial notice of the statutory and common law of any state of the union without pleading or proof."); United States v. Schmitt, 748 F.2d 249, 255 (5th Cir. 1984) (same).

Evidence of state law, as reflected in both statutory and common law, and whether a public official violated or complied, is relevant and admissible (1) to show the public official's intent, see United States v. Jennings, 487 F.3d 564, 580 (8th Cir. 2007) (district court's instructions "correctly stated that the compliance or non-compliance with [state disclosure statutes] is only evidence relating to [defendant-legislator's] intent to defraud"); United States v. Keane, 522 F.2d 534, 554-55 (7th Cir. 1975) (district court instructed jury that in deciding whether defendant defrauded citizens of right to have city's affairs conducted "free from conflict of interest," jury may consider state statutes and city ordinances, inter alia, "as relevant to the defendant's intent to defraud if any such intent existed."), (2) to show motive, see United States v. Brechtel, 997 F.2d 1108, 1115, 1116 (5th Cir. 1993) (in prosecution under 18 U.S.C. § 1006's "conflict of interests prohibition," testimony that regulation prohibited interested director transactions "properly tended to demonstrate the defendants' motive for nondisclosure"), and (3) to assist the jury in understanding the actions and

-11-

conduct of the participants.  See United States v. McElroy, 910
F.2d 1016, 1023-24 (2d Cir. 1990) (evidence of "Regulation U"
properly admitted so witnesses could explain basis for lending
policies and creditworthiness determinations as they related to
defendant's loan application); see also Brechtel, 997 F.2d at
1115 n. 27  (describing cases in which courts have admitted civil
violation evidence in criminal prosecutions to show motive and to
assist jury in understanding conduct or transactions).

**B.   Records of Regularly Conducted Activity**

The parties have entered into stipulations regarding the
admissibility of records pursuant to Fed. R. Evid. 803(6)
(records of regularly conducted activity); Fed. R. Evid. 803(8)
(public records and reports); and Fed. R. Evid. 803(10)(absence
of public record or entry).  With respect to the business records
stipulation, the parties have agreed that either party may argue
that a portion of a particular record which is otherwise
admissible pursuant to the stipulation contains inadmissible
hearsay within hearsay.  As set forth in the stipulation, "For
example, the parties dispute whether, in a memorandum otherwise
covered by this stipulation, a statement which the writer of a
memorandum attributes to another is admissible under the business
records exception, or is inadmissible hearsay within hearsay."

Defendant's contention, that statements in business records

-12-

which come from someone other than the writer are not admissible, is inconsistent with the text of Rule 803(6), which makes clear that any record meeting its requirements is admissible "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."  Other than trustworthiness, there is no separate test in Rule 803(6) for determining the admissibility of information in a qualifying record which has been obtained from a third party.

There is a presumption of admissibility for records which meet the requirements of Rule 803(6).  United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) (citations omitted) ("Rule 803(6) 'favor[s] the admission of evidence rather than its exclusion if it has any probative value at all'").  As the rule itself makes clear, "[t]he 'principal precondition' to admissibility is 'that the record[] [has] sufficient indicia of trustworthiness to be considered reliable.'" Id.  See also Phoenix Associates III v. Stone, 60 F.3d 95, 101 (2d Cir. 1995) (same).  In other words, "[a] record is admissible if it meets the other requirements of Rule 803(6) . . . 'unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.").  United States v. Jacoby, 955 F.2d 1527, 1536 (11th Cir. 1992); see United States v. Beecroft, 608 F.2d 753, 761 (2d Cir. 1979)(stating that a document is admissible as a

-13-

business record when "(1) the report is timely made in the course of a regularly conducted business activity, and (2) there is no indication of untrustworthiness.").

Applying these principles, the Second Circuit has approved the admission of a prisoner log book. See United States v. Reyes, 157 F.3d 949, 952-53 (2d Cir. 1998) (prison logbook, which contains information provided by visitors admissible as business record because prison employees verified visitor information by requesting identification; any "residual doubts on the question [of whether the logbook was trustworthy because it reflected irregularities and visitors may have an incentive to provide false information] would go to the weight of the evidence, not its admissibility").  The cases contain other examples of the admission, as business records, of documents obviously containing statements from persons other than the document's author.  See Major League Baseball Properties v. Salvino, Inc., 542 F.3d 290, 313 (2d Cir. 2008) (rejecting hearsay objections to memorandum prepared for incoming commissioner regarding operations and history of league); Jacoby, 955 F.2d at 1537 (despite defense contention that author of memorandum "had the motive to fabricate the memo to cover himself if he were accused of improprieties in connection with the closing of the . . . loans . . . [n]either the 'source of information' the document contained – a telephone

-14-

conversation with the [the lawyer's] client, [the defendant] – nor the 'circumstances of preparation' – a frequent act by [the lawyer] in the practice of his profession – 'indicated lack of trustworthiness.")  Defendant construes the rule incorrectly, and as a result, the records which are the subject of the stipulation are admissible even if they contain statements which the author of the record attributes to another.

### C.    801(d)(2)(E) Co-conspirator Statements

In addition to being admissible as business records, in view of Bruno's contractual associations with Wright Investors' Service ("Wright), the Abbruzzese, Ball, and Fassler Companies, and Asentinel, documents of those entities, as well as oral statements made by their representatives, are admissible pursuant to Fed. R. Evid. 801(d)(2)(E) as co-conspirator statements. Although this exception is most often relied on in the context of criminal conspiracies, as the Second Circuit has observed, "the objective of the joint venture that justifies deeming the speaker as the agent of the defendant need not be criminal at all." United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002); see United States v. Brockenborrugh, 575 F.3d 726, 735 (D.C. Cir. 2009) ("despite its use of the word 'conspiracy', Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise"); United

-15-

States v. Postal, 589 F.2d 862, 886 n. 41 (5th Cir. 1979) ("[T]he agreement [upon which admissibility of a joint venturer's statement is predicated] need not be criminal in nature.")

Statements have been admitted when made in furtherance of "a business relationship" which involved a "lawful joint enterprise to acquire" certain property, see Brockenborrugh, 575 F.3d at 735-36; a "common enterprise of stock promotion," see United States v. Gewin, 471 F.3d 197, 200, 201-02 (D.C. Cir. 2006); and a voyage of a vessel, see United States v. Postal, 589 F.2d 862, 886 n. 41 (5th Cir. 1979) (logbook of voyage admissible co-conspirator statement because "voyage was a 'joint venture' in and of itself apart from the illegality of its purpose").

D.    **Admission of Statements to a Journalist, and the Journalist's Privilege**

At trial, the government will call two reporters to testify about published material: New York Magazine reporter Geoffrey Gray and former New York Sun reporter William Hammond (now a Daily News columnist).  Gray will confirm published quotations and summaries regarding statements made by defendant Bruno, and Hammond will confirm published quotations and summaries regarding statements made by Bruno's press secretary and Wright president Eugene Helm.

The government's examination of Gray will be limited to confirmation of statements made by Bruno as reported in the

-16-

following paragraph of a published article:

> He [Bruno] was introduced to executives at Wright
> Investors' by a mutual friend over a decade ago. . . .
> "I took a look," he says, and found the company to be
> "small, neat, clean, pristine." Bruno signed on as a
> consultant. "I provided the entree. In that business,
> the biggest problem is access. I provided access."
> Bruno, who makes $121,000 a year in salary as majority
> leader, believes there is nothing improper about
> steering people he does business with in politics to
> open portfolios at Wright. There was no quid pro quo,
> he says. If Wright wanted to meet with trustees of a
> union looking to invest pension money, Bruno would make
> the phone calls. "My pitch to them was, 'If you like
> what they have to say, take it to the next level. If
> you don't, say goodbye.'"

Geoffrey Gray, <u>The Un-Reformed</u>, N.Y. Magazine, Mar. 1, 2008.

The government's examination of Hammond will be limited to

confirmation of statements Bruno's press secretary, Marcia White,

and Wright president Eugene Helm, made to Hammond. Hammond

reported the following regarding Ms. White:

> Similarly, Mr. Bruno's press secretary, Marcia White,
> said she could not provide details about the nature of
> the majority leader's consulting work or who employs
> him. "It wouldn't be fair to his clients to disclose
> information with regard to his consulting," Ms. White
> said.

William Hammond, <u>New Guidelines Sought For Lawmakers' Work</u>, N.Y.

Sun, Jul. 16, 2003.

Hammond reported the regarding Helm:

> The one consulting client he [Bruno] does list on
> the [annual statement of financial disclosure] form is
> the parent company of Wright Investors' Service, which
> manages money primarily for institutional investors
> such as pension funds. The company's president, Eugene

-17-

> Helm, said Mr. Bruno has been a part-time salaried
> consultant since at least 1994, helping Wright identify
> and recruit customers.  "If he is aware of an
> opportunity and thinks there is appropriate fit, he
> will get in touch with us," Mr. Helm said.  He said the
> firm does not manage any money for New York State and
> that Mr. Bruno has no dealings with customers over
> which he would have influence as a state official.

Id.

Although the Second Circuit recognizes that a journalist may

assert a "qualified privilege for journalistic information,"

Gonzalez v. Nat'l Broadcasting Co., Inc., 194 F.3d 29, 32 (2d

Cir. 1999), where the material sought involves published

material, the privilege is overcome if the material is "of likely

relevance to a significant issue in the case, and [is] not

reasonably obtainable from other available sources." Id. at 36.

"In light of these principles, courts in this and other circuits

routinely permit journalists to testify at trial where, as here,

they are called solely to confirm statements that were made in a

published newspaper article." United States v. Treacy, 603

F.Supp.2d 670, 672 (S.D.N.Y. 2009).

Here, neither the reporters nor their counsel object to

providing testimony confirming the subject paragraphs.[4]  Counsel

---

[4]Gray's attorney has requested that the Court determine,
before Gray is called to testify, whether Bruno aide Kris Thompson,
who was present for parts of the interview, will confirm or deny
that Bruno made the statements in question, as reported in the
article.  When asked about the specific paragraph in question,
Thompson's counsel, Stephen Coffey, represented in a letter dated

for Gray has, however, requested an opportunity for a telephone conference with the Court to address his concerns regarding the proper scope of cross-examination and asks that this Court follow the same procedures used by Judge Raykoff in <u>United States v. Treacy</u>, 603 F.Supp.2d 670, 673 (S.D.N.Y. 2009) (limiting direct and cross-examinations to four "essential" inquires).

Bruno's statements to reporter Gray are admissible because they are a party's own statement. Fed. R. Evid. 801(d)(2)(A). The statement by the press secretary to reporter Hammond – "[i]t wouldn't be fair to his clients to disclose information with regard to his consulting" – is a statement of a party's agent. 801(d)(2)(D). As noted above, Helm's statement is admissible as the statement of co-conspirator. The statements of both White and Helm are also admissible because they are not offered for the truth. Fed. R. Evid. 801(c).

### E.    The Admission of Grand Jury Testimony as Substantive Evidence

Under certain circumstances, a witness's grand jury testimony may be admissible as substantive evidence. Fed. R. Evid 801(d) provides that a statement is not hearsay if

> The declarant testifies at the trial or hearing and is subject to cross examination concerning the statements and the statement is (A) inconsistent with the

_____

October 1, 2009 that "Mr. Thompson states that he never heard Senator Bruno say what was alleged to have been stated."

declarant's testimony, and was given under oath subject
to the penalty of perjury at a trial, hearing, or other
proceeding, or in a deposition, or (B) is consistent
with the declarant's testimony and is offered to rebut
an express or implied charge against the declarant of
recent fabrication or improper influence or motive.

As explained by Judge Friendly, "if a witness has testified
to [certain] facts before a grand jury and forgets or denies them
at trial, his grand jury testimony or any fair representation of
it falls squarely within Rule 801(d)(1)(A)." United States v.
Marchand, 564 F.2d 983, 999 (2d Cir. 1977); Accord United States
v. Milton, 8 F.3d 39, 46-47 (D.C. Cir. 1993) (quoting Judge
Friendly and rejecting defendant's argument that witness's lack
of memory regarding her grand jury testimony kept her trial
testimony from satisfying Fed. R. Evid. 801(d)(1)(A) and the
Confrontation Clause); United States v. Williams, 737 F.2d 594,
608 (7th Cir. 1984) ("We do not read the word 'inconsistent' in
Rule 801(d)(1)(A) to include only statements diametrically
opposed or logically incompatible." Inconsistency "may be found
in evasive answers, . . . silence, or changes in positions," "a
purported change in memory," and, "[p]articularly in a case of
manifest reluctance to testify"). Moreover, admission of grand
jury testimony as substantive evidence is not prohibited by
Crawford v. Washington, 541 U.S. 36 (2004). United States v.
Melenedez, 2006 WL 1379624, at *6 (S.D.N.Y. 2006).

Where a witness is impeached, prior grand jury testimony is

-20-

admissible as substantive evidence if it qualifies as a prior consistent statement made before the motive to fabricate arose. United States v. James, 609 F.2d 36, 49-50 (2d Cir. 1979). In addition, a prior consistent statement may be admissible for rehabilitation even if not admissible under Rule 801(d)(1)(B). United States v. Brennan, 798 F.2d 581, 587-89 (2d Cir. 1986).

**F.    Evidence of Prior "Good Acts" is Not Admissible**

Pursuant to Fed. R. Evid. 405 defendant may offer character evidence only in one of two forms: "testimony as to reputation" or "testimony in the form of an opinion." Because, as our proposed jury instructions make clear, character is not an essential element of honest services fraud, defendant may not admit evidence of specific instances of conduct. Fed. R. Evid. 405(b). Cf. United States v. Benedetto, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (noting that, by offering evidence that defendant had not taken bribes on other occasions, "the defense improperly attempted to establish defendant's good character by reference to specific good acts"); United States v. Doyle, 130 F.3d 523, 542 (2d Cir. 1997) ("if specific good deeds could be introduced to disprove knowledge or intention, which are elements of most crimes, the exception would swallow the general rule of 405(a) that proof of specific acts is not allowed"); United States v. Scarpa, 913 F.2d 993, 1010-11 (2d Cir.1990) (observing that "good

-21-

acts" evidence "would only be relevant if the indictment charged [defendants] with ceaseless criminal conduct").

Under Fed. R. Evid. 404(a), where proffered character evidence has "no bearing on [a pertinent character trait] and . . . could well cause the jury to be influenced by sympathies that have no bearing on the merits of the case," the evidence should be excluded. United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (upholding district court's refusal in fraud case to allow defendant to introduce evidence that he cared for his son with cerebral palsy and therefore would not commit fraud because a fraud conviction would cause him to leave his son).

### Trial Issues

#### A.    The Government May Impeach Its Witnesses

The government plans to call as trial witnesses a number of individuals who participated in conversations and/or transactions involving defendant which are necessary to construct the government's case. The government certainly does not vouch for the credibility of any witness. See United States v. Thai, 29 F.3d 785, 807 (2d Cir. 1994) ("A prosecutor may not properly vouch for the credibility of a witness"). The government may argue to the jury that portions of the testimony of certain witnesses should not be credited, and it may also impeach certain aspects of the testimony of some witnesses. As the Second

Circuit explained in United States v. Eisen, 974 F.2d 246 (2d Cir. 1993):

> Where the Government has called a witness whose corroborating testimony is instrumental to constructing the Government's case, the Government has the right to question the witness, and to attempt to impeach him about those aspects of his testimony that conflict with the Government's account of the same events. [Citation omitted]. Here, the testimony of the hostile witnesses provided affirmative proof that was necessary to construct the Government's case, and thus the Government was entitled to question these witnesses and to invite the jury to disbelieve that portion of their accounts that contradicted the prosecution's theory of the case.

974 F.2d at 262-63.  Indeed, "impeachment of hostile Government witnesses is admissible as negative inference evidence." Id. at 262 (citing United States v. Marchand, 564 F.2d 983, 985-86 (2d Cir. 1977).  However, "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." United States v. Zackson, 12 F.3d 1178, 1184 (2d Cir. 1993).

**B.    On Direct Examination, The Government May Elicit Evidence of Pleas, Cooperation Agreements, Orders of Statutory Immunity, and Pending Charges**

The witnesses who will be called by the government include witnesses who have (a) pled guilty to a criminal offense and signed an agreement to cooperate with the United States; (b) indicated that they will assert their right under the Fifth

-23-

Amendment not to incriminate themselves (and as to whom the government has applied or will apply to this Court for an order granting statutory immunity), and/or (c) been charged with criminal conduct (either by way of indictment or complaint) which has not yet been resolved. Courts recognize a general principle allowing the government to bring out on direct examination "matters damaging to the witness's credibility." United States v. Singh, 628 F.2d 758, 761 (2d Cir. 1980). "Admission of this evidence is permitted in order to avoid an inference by the jury that the Government is attempting to keep from the jury the witness's possible bias." Id.

Based on this principle, during the direct examination of any witness who is testifying pursuant to a cooperation agreement, the government may elicit the fact of the agreement and the witness's understanding of it. United States v. Cosentino, 844 F.2d 30, 33 (2d Cir. 1988) "[T]he elicitation of the fact of the agreement and the witness' understanding of it, as a motivation for the witness to testify for the Government, should be permitted on direct examination in order to anticipate cross-examination by the defendant which might give the jury the unjustified impression that the Government was concealing this relevant fact." Id.

The government is also entitled to elicit (1) that the

-24-

witness has pled guilty; United States v. Rothman, 463 F.2d 488, 490 (2d Cir. 1972); (2) whether the witness has been sentenced, United States v. Blackwood, 456 F.2d 526, 529 (2d Cir. 1972); and (3) the nature of the underlying charge. United States v. Hasenstab, 575 F.2d 1035, 1040 (2d Cir. 1978); see also United States v. Koppers Co., Inc., 652 F.2d 290, 299 (2d Cir. 1981) (government entitled to elicit on direct examination that witnesses "had perjured themselves during the early phases of the state investigation.")

Similarly, during the direct examination of witnesses who are testifying pursuant to a grant of statutory immunity, the government may elicit the fact of such immunity and compulsion order, and the witness' understanding of it. United States v. McNeil, 728 F.2d 5, 14 (1st Cir. 1984). Whether the defense attacks the credibility of a witness who is testifying under such an order "does not diminish the benefit to the jury of having before it information relevant to its task of judging credibility and weighing testimony. The fact of immunity and compulsion orders aids the jury function regardless of whether defendant intended to attack the credibility of the witnesses." Id. (citation omitted).

Finally, as to any witness who is testifying while a criminal charge is pending, it is appropriate to elicit testimony

to "show the nature of" serious charges, because the witness "might have been motivated to testify in a manner that would ingratiate himself" with the prosecution.  See United States v. Miles, 480 F.2d 1215, 1217 (2d Cir. 1973).  However, once the jury has "a full and accurate picture of the witness's misconduct," the court may "refus[e] to permit defense counsel to develop the facts underlying the charges."  Id. Cf. Price v. Thurmer, 514 F.3d 729, 731 (7th Cir. 2008) (if witness, charged with a crime denies that he committed it, extrinsic evidence of the crime is not admissible).

### C.    Bifurcation of Forfeiture Proceeding

_____The parties have agreed to bifurcation of the forfeiture allegations, but are still discussing whether those allegations should be decided by this Court or the jury.

                              Respectfully submitted,

                              ANDREW T. BAXTER
                              UNITED STATES ATTORNEY


                      by:   _/s/ Elizabeth C. Coombe_
                              Elizabeth C. Coombe
                              William C. Pericak
Dated: October 5, 2009        Assistant U.S. Attorney

                              -26-