UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____
UNITED STATES OF AMERICA,           :
                                    :    Crim. No. 09-CR-029
            v.                      :    (Hon. Gary L. Sharpe)
                                    :
JOSEPH L. BRUNO,                    :
                                    :
            Defendant.              :
_____ :

## GOVERNMENT'S SENTENCING MEMORANDUM

On December 7, 2009, a jury returned a verdict finding Defendant guilty of two counts of honest services mail fraud (Counts 4 and 8), in violation of 18 U.S.C. §§ 1341 and 1346. The jury found Defendant not guilty of Counts 1, 2, 5, 6, and 7, and was unable to reach a verdict on Count 3. The United States submits this Sentencing Memorandum in anticipation of sentencing, which is scheduled for May 6, 2010.

For the reasons set forth below, the United States agrees with the Guidelines calculations in the Presentence Report and respectfully requests that this Court sentence Defendant to a term of imprisonment of 97 months. In addition, pursuant to the terms of the Stipulated Resolution of Forfeiture and Restitution, the United States requests that this Court impose restitution and forfeiture of $280,000.

**I.   APPLICABLE STATUTORY AND GUIDELINES PROVISIONS**

    **A.   Statutory Maximum Sentences**

Defendant's honest services mail fraud convictions subject him to a statutory maximum term of twenty years of imprisonment, 18

U.S.C. §§ 1341 and 1346; a three-year term of supervised release, see 18 U.S.C. § 3583; and a fine of up to $250,000, see 18 U.S.C. § 3571.

### B.  Factual Findings

The United States adopts the facts set forth in the Presentence Report submitted by the United States Probation Office. The United States disagrees with the facts as set forth by Defendant in the addendum to the Presentence Report.

### C.  Calculation of the Sentencing Guidelines Range

The United States adopts the offense level computations, the criminal history score, and the resulting Sentencing Guidelines range set forth in the Presentence Report in all respects for the following reasons:

#### 1.  U.S.S.G. §2C1.1 Is The Applicable Guideline.

The applicable guideline for honest services mail fraud is §2C1.1.  The Statutory Index for § 1341 refers to both §2C1.1 and §2B1.1.  U.S.S.G. App. A.  Where the statutory index refers to more than one guideline, "the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted" is used.  U.S.S.G. App. A, intro.  Here, it is clear that the applicable guideline is §2C1.1 because its title, statutory provisions, and background all specifically refer to honest services mail fraud. See U.S.S.G. §2C1.1, title ("Fraud Involving the Deprivation of the Intangible Right to Honest Services of

Public Officials"); id. at comment. (statutory provisions)("1341 (if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official)"); id. at backg'd.("Section 2C1.1 also applies to fraud involving the deprivation of the intangible right to honest services of government officials").

### 2. **Application of §2C1.1**

Section 2C1.1 states in pertinent part:

> 2C1.1    Offering, Giving, Soliciting or Receiving a Bribe; Extortion Under Color of Official Right; ***Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials***; Conspiracy to Defraud by Interference with Governmental Functions
>
> (a)  Base Offense level
>
> (1) 14, if the defendant was a public official
>
> (b)  Specific Offense Characteristics
>
> (2) If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greater, exceeded $5,000, increase by the number of levels from the table in §2B1.1(Theft, Property Destruction, and Fraud) corresponding to that amount.
>
> (3) If the offense involved an elected public official or any public official in a high-level decision-making or sensitive position, increase by 4 levels.  If the resulting offense level is less than level 18, increase to level 18

Defendant was a public official (base offense level 14), who was "in a high-level decision-making or sensitive position" (4-level increase). In addition, "the value of anything obtained by" Defendant, for the counts of conviction, was more than $200,000 resulting in a 12-level increase pursuant to §2C1.1(b)(2).[1] Because honest services fraud cases "typically involve an improper use of government influence that harms the operation of government in a manner similar to bribery offenses," U.S.S.G. §2C1.1, backg'd., it is appropriate to apply this specific offense characteristic. See United States v. Woodard, 459 F.3d 1078, 1087 (11th Cir. 2006) (concluding that where police captain benefitted from undisclosed conflict of interest resulting from a business he created whereby his wife contacted people whose property was being held by the police department and, for percentage, obtained return of property, "every dollar RAP took from the City resulted from

---

[1] Although Defendant was acquitted of the charges in Counts 1, 2, 5, 6, and 7, and the jury was unable to reach a verdict on Count 3, this Court may include the payments relating to those counts as "relevant conduct" in determining defendant's sentencing range. See United States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005) (district court may consider acquitted conduct when sentencing within the statutory range authorized by the jury's verdict). The extent to which to include those payments is a matter committed to this Court's sound discretion. See id. ("We restate, however, that while district courts may take into account acquitted conduct in calculating a defendant's Guidelines range, they are not required to do so. Rather, district courts should consider the jury's acquittal when assessing the weight and quality of the evidence presented by the prosecution and determining a reasonable sentence."). Inclusion of those payments, which would bring the total payments to approximately $3.2 million, would result in an additional 6-level increase.

4

depriving the City of [defendant's] honest services."); United States v. Antico, 275 F.3d 245, 270, 271 (3d Cir. 2001) (concluding that loss was the amount received by girlfriend's company where public official failed to recuse or to disclose conflict of interest resulting from his approval of permits for girlfriend's company); United States v. Parrish, 84 F.3d 816, 819 (6th Cir. 1996) (stating that where defendant, in breach of her fiduciary duty to her employer, accepted commissions from contractor in exchange for recommending that contractor to her employer, commission payments "rightly formed the basis for determining the appropriate offense level under the guidelines;" "A fiduciary who violates her duties for her own profit 'is accountable . . . for all the profits obtained . . . although the . . . [party owed the duty] may not have been injured thereby.'") (quoting Jackson v. Smith, 254 U.S. 586, 588-89 (1921)).

The total adjusted offense level is therefore 30.

### 3. The 2009 Guidelines Manual, Which Does Not Have a Cross-Reference to §2C1.3, Applies.

The 2009 Guidelines Manual is the appropriate manual. See U.S.S.G. §1B1.11 (directing application of Guidelines Manual in effect on the date of sentencing instead of the Guidelines Manual in effect on the offense date unless that would violate the ex post facto clause). Here, the mailings identified in Count 4 occurred between March 2, 2004 and November 29, 2004, while the mailing charged in Count 8 occurred on November 15, 2005. The dates of the

mailings in Count 4 straddle the November 1, 2004 guideline amendments, including an amendment affecting the applicable guideline for honest services fraud.  Consideration of the effect of the November 1, 2004 guideline amendments is therefore necessary.

Before November 1, 2004, the applicable guideline for honest services mail fraud was §2C1.7 and that guideline contained a cross reference to §2C1.3 (Conflict of Interest).  U.S.S.G. §2C1.7(c)(4) (2003) ("If the offense is covered more specifically under [§2C1.1, 2C1.2, or §2C1.3], apply the offense guideline that most specifically covers the offense.").  Since November 1, 2004, the applicable guideline for honest services mail fraud has been §2C1.1 and that guideline does not cross reference §2C1.3.

The current guideline applies here because the mailing charged in Count 8 occurred more than one year after that guideline was last revised.  See §1B1.11(b)(3) ("If the defendant is convicted of two offenses, the first committed before and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses.); see also United States v. Broderson, 67 F.3d 452, 456 (2d Cir. 1995) (affirming district court's application of manual in effect on the sentencing date where last count of indictment charged wire communication after effective date of enhancement reflected in manual in effect on the sentencing date).  As a

result, it is unnecessary for this Court to decide whether the ex post facto clause applies at all now that the Guidelines are not mandatory. See United States v. Johnson, 558 F.3d 193, 194 n. 1 (2d Cir. 2009) (noting that issue is "open question"). It is the government's position that the ex post facto clause does not apply now that the Guidelines are not mandatory.

Even assuming for the sake of argument that the deleted cross-reference should be examined, neither its plain language nor interpretative case law would warrant its application here.

On its face, §2C1.3, "Conflict of Interest; Payment or Receipt of Unauthorized Compensation," does not more specifically cover Defendant's honest services mail fraud offense. In fact, the plain language of §2C1.1 makes clear that it is the applicable guideline for honest services mail fraud. See supra at 3 (title and commentary refer to honest services mail fraud). See also United States v. Seminerio, 2010 WL 148618, at *13 (S.D.N.Y. 2010) (concluding that the "Sentencing Commission intended Section 2C1.1 to apply to [honest services mail fraud]" because the §2C1.1 Commentary lists honest services fraud while the §2C1.3 Commentary does not).

In addition, virtually all of the courts that have examined whether the deleted cross-reference should be applied to honest services fraud cases have concluded that it should not. For example, in United States v. Grandmaison, 77 F.3d 555, 558 (1st

Cir. 1996), the First Circuit affirmed the district court's refusal to apply §2C1.3 where an alderman, who also worked for a construction company, recused himself for construction company bids, but "secretly took steps to manipulate the contacts he enjoyed as an alderman to Eckman Construction's advantage." As the First Circuit explained:

> Defendant maintains that he is mainly guilty of not revealing a conflict of interest. To be sure, his conduct involved some element of such a violation. It does not follow from this, however, that he should not be sentenced pursuant to section 2C1.7, the guideline corresponding to the mail fraud statute to which he pled guilty. First, we are convinced that 18 U.S.C. §§ 1341, 1346 encompasses crimes of the sort committed by defendant. Second, even if the applicability of section 1346 were suspect, we are not at all certain that downward departure to the sentence prescribed by section 2C1.3 would be appropriate. This is principally because section 2C1.3 linguistically does not apply to defendant or his conduct; that guideline only addresses conflicts of interests by present or former federal officers and employees and, therefore, does not reach state or local officials such as defendant. In the final analysis, defendant has managed to persuade us of only one thing: that had he been a federal employee or official, the government might have been able to charge him with violating other statutes as well. See U.S.S.G. §2C1.3 (listing statutory provisions corresponding to that guideline). Because this argument clearly does not merit the application of a lower sentencing range defendant seeks, we affirm the district court's refusal to depart downward by analogy to section 2C1.3.

77 F.3d at 567.

The Eighth Circuit also upheld the district court's application of §2C1.7 instead of §2C1.3 in an honest services fraud case. United States v. Jennings, 487 F.3d 564, 586-88 (8th Cir. 2007). As the Eighth Circuit explained, §2C1.7 was the appropriate

guideline because the legislator not only failed to disclose a conflict of interest, but he also used his position of power to lobby for personal interests and to influence colleagues.

Defendant relies on the exception to this line of cases, United States v. Hasner, 340 F.3d 1261 (11th Cir. 2003). Although the Eleventh Circuit affirmed the district court's application of §2C1.3 to an honest services fraud conviction in Hasner, its conclusion was limited: "Because the offense at issue essentially involved Hasner's failure to disclose his conflicts of interest, the district court did not clearly err by applying section 2C1.3 to Fisher and Hasner's offenses." Id. at 1276. The Jennings court, which cited and considered both Grandmaison and Hasner, concluded that, as with Grandmaison, "there was more to [the legislator's] scheme than a conflict of interest." Jennings, 487 F.3d at 588.

Here, as in Jennings and Grandmaison, even assuming for the sake of argument that the deleted cross-reference should be considered, §2C1.1 should still be applied because there was more to Defendant's scheme than just an undisclosed conflict of interest. As alleged in the Indictment and proven at trial, Defendant devised "a scheme to defraud New York and its citizens of the intangible right to his honest services by (a) contacting for personal compensation and enrichment, and (b) entering and attempting to enter into direct and indirect financial relationships with, persons or entities who were pursuing interests

before the Legislature or State agencies, and by concealing, disguising, and failing to disclose the existence and nature of such compensated contacts and financial relationships, and the resulting conflicts of interest." Indictment, ¶ 18. Defendant also "contact[ed] persons or entities who had business before the Legislature or State agencies . . . exploiting his official position for personal compensation and enrichment, knowing and believing that his reasonably perceived ability to influence official action would, at least in part, motivate those he contacted to enter into financial relationships beneficial to his personal financial interests." Indictment, ¶ 19. Defendant "did not perform legitimate work commensurate with the payments from Jared E. Abbruzzese through the Abbruzzese Companies and, as a result, the payments were, in whole or in part, gifts." Indictment ¶ 51.

The nature of Defendant's scheme and his actions – targeting individuals and entities over whom he held official power, concealing relationships by use of a "straw" consulting business, and taking official action benefitting these individuals and entities, – demonstrate that this case involves far more than an undisclosed conflict of interest.[2]

---

[2]There was also significant evidence that Defendant used state employees to conduct his personal business.

**4.   Acceptance of Responsibility**

Defendant is not entitled to a downward adjustment pursuant to U.S.S.G. §3E1.1(a) because he has not accepted responsibility. See United States v. Reifler, 446 F.3d 65, 110 (2d. Cir. 2006) (adjustment "'not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt [and] is convicted,' even if he 'then admits guilt and expresses remorse.'") (quoting U.S.S.G. §3E1.1, Application Note 2).

**5.   Criminal History Category**

The government agrees that Defendant's criminal history is I as set forth in the Presentence Report.

**6.   Forfeiture, Restitution, and Fine**

The parties have agreed to a total monetary sanction of $280,000.  Defendant consents to (1) an order of forfeiture of $280,000, and (2) an order of restitution of $280,000. Payment of restitution will be credited to the forfeiture money judgment.

**7.   Guidelines Range and Sentence**

As described above and set forth in the presentece report, the total offense level is 30, and the criminal history category is I. Defendant should therefore receive a sentence of 97 to 121 months imprisonment and a supervised release term of 2 to 3 years absent a departure or variance from the applicable guidelines range pursuant to United States v. Booker, 543 U.S. 220 (2005).

The government objects to the imposition of a sentence below the applicable guidelines range. The record reveals no mitigating factors not adequately considered by the Sentencing Commission that would remove this case from the "mine-run" of similar cases, see Rita v. United States, 551 U.S. 338, 352 (2007).

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

Based on all of the information before the Court, the government respectfully recommends a sentence of 97 months (the low end of the Guidelines range)[3] and requests that this Court order forfeiture and restitution of $280,000. This recommended sentence is "sufficient, but not greater than necessary," to comply with the sentencing purposes in 18 U.S.C. § 3553(a)(2).

The nature and circumstances of this offense are particularly egregious. Defendant, whose position as New York State Senate Majority Leader made him one of the three most powerful men in New York State, exploited his office for his own personal gain. Under the guise of a "consulting" business, Defendant enriched himself by contacting people and entities with business before the New York

---

[3] "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" Kimbrough v. United States, 552 U.S. 85 (2007); see, e.g., Gall v. United States, 552 U.S. 38 (2007) (Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act -- "to diminish unwarranted sentencing disparity." Rita v. United States, 551 U.S. 338, 354 (2007).

12

State Senate.  Defendant was well aware that the people he solicited understood the breadth and scope of the power he enjoyed as a result of his office.  This enabled Defendant to extract exorbitant payments while performing no legitimate services anywhere commensurate with the magnitude of those payments.

Despite the resulting material conflicts of interest, Defendant took official action benefitting the interests of the people and entities he contacted.  He also used his "consulting" business to conceal and disguise the true nature of the payments from the public.  For example, the agreements with Communication Technology Advisors LLC and Capital & Technology Advisors LLC were with Joseph L. Bruno individually.  Defendant nevertheless directed that payments from these companies be reported as if the agreements were with his "consulting" business, Capital Business Consultants LLC.  There was no legitimate reason for this, and the plain purpose was to conceal and disguise the true source of the payments. Without information about who was paying Defendant, the citizens of New York State and members of the legislature were not able to evaluate whether Defendant had placed his financial self-interest above the public interest.

Defendant further abused his public office by directing state employees to deposit payments, transfer funds, follow up on late payments, and review "consulting" agreements.  These state employees often did this work on state time.

The massive amount of taxpayer money Defendant directed to the Capital District by virtue of his control of members items and other state money does not warrant a lower sentence. Neither does his age.

Defendant has eroded the confidence of the citizens of New York State in the proper functioning of their government by choosing to put his own personal financial interests ahead of the interests of those who elected him to serve them. Given the duration, complexity, and magnitude of Defendant's conduct, a sentence of 97 months is necessary "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] and to afford adequate deterrence to criminal conduct."

Dated: April 23, 2010                    Respectfully submitted,

                                         RICHARD S. HARTUNIAN
                                         United States Attorney


                                    By:  /s/ Elizabeth C. Coombe
                                         Elizabeth C. Coombe
                                         Bar Roll No. 511925
                                         William C. Pericak
                                         Bar Roll No. 102352
                                         Assistant U. S. Attorneys