UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA :
v. :
JOSEPH L. BRUNO, Defendant. :

Criminal Number: 09-CR-29 (GLS)

VIOLATIONS: 18 U.S.C. §§ 1341, 1346 (Honest Services Mail Fraud); Forfeiture Allegation

Two Counts

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED
MAY 0 3 2012
LAWRENCE K. BAERMAN, CLERK
ALBANY

SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

COUNTS ONE AND TWO

Introduction

At all times relevant to this Indictment:

1. Defendant JOSEPH L. BRUNO was a New York State Senator representing the 43rd Legislative District, a district covering Rensselaer County and parts of Saratoga County. Defendant JOSEPH L. BRUNO served in the Senate from on or about January 1, 1976 through on or about July 18, 2008. From on or about January 1, 1995 through on or about June 24, 2008, defendant JOSEPH L. BRUNO was also the Temporary President and Majority Leader of the New York State Senate ("the Senate Majority Leader"). As the Senate Majority Leader, defendant JOSEPH L. BRUNO was one of the three most powerful government officials in New York State.

2. As a State Senator, defendant JOSEPH L. BRUNO's official duties included (a) voting and behind-the-scenes influence on legislation and budget appropriations, and (b) making

recommendations to, negotiating with, and exercising legislative oversight of New York State agencies. As the Senate Majority Leader, defendant JOSEPH L. BRUNO's official duties included (a) controlling the Senate's agenda and deciding whether bills would be brought to the Senate floor for vote; (b) together with the Governor and the Speaker of the Assembly, deciding which proposed budget appropriations would be funded in the annual state budget; and (c) deciding how funds allocated to the Senate Majority for, among other things, member and line items, would be disbursed.

3. As a State Senator and later as the Senate Majority Leader, defendant JOSEPH L. BRUNO (and his staff) routinely met with various individuals and representatives of groups who asked that defendant JOSEPH L. BRUNO take action benefitting their interests regarding legislative, funding, contract, and regulatory issues pending before the New York State Legislature ("the Legislature") and New York State agencies.

**The Duty of Honest Services**

4. The State of New York and its citizens had an intangible right to the honest services of defendant JOSEPH L. BRUNO. Both as a New York State Senator and the Senate Majority Leader, defendant JOSEPH L. BRUNO had a fiduciary relationship with the State of New York and its citizens.

**Jared E. Abbruzzese**

5. Jared E. Abbruzzese was an individual associated with, among other entities, Communication Technology Advisors LLC ("CTA"); Capital & Technology Advisors LLC ("C&TA"); Motient Corporation ("Motient"); TerreStar Networks, Inc. ("TerreStar"); and Bazaguma LLC ("Bazaguma") (collectively referred to as "the Abbruzzese Companies").

6. From time to time, Jared E. Abbruzzese as well as the Abbruzzese Companies, and/or companies or entities in which they had or were seeking a financial interest as actual or prospective customers, employers, or associates, were pursuing interests requiring official action by New York State officials including defendant JOSEPH L. BRUNO. These included interests in a nanotechnology company, Evident Technologies, Inc., and the franchise held by the New York Racing Association.

**The Scheme to Defraud**

7. From in or about February 2004 and continuing through at least December 2006, in the State and Northern District of New York, defendant JOSEPH L. BRUNO did devise a scheme and artifice to defraud and to materially deprive the State of New York and its citizens of the intangible right to his honest services through bribery, kickbacks, and the concealment of bribery and kickbacks, thereby exploiting his official position for personal compensation and enrichment by soliciting and accepting payments from Jared E.

Abbruzzese knowing, understanding, and believing that (a) he was not entitled to the payments; (b) the payments would be in return for official acts as opportunities arose rather than being given for reasons unrelated to his office; and (c) his reasonably perceived ability to influence official action would, at least in part, motivate the making of such payments.

8. The State of New York and its citizens paid defendant JOSEPH L. BRUNO a salary for his honest services, but, as a result of the scheme and artifice to defraud, to their detriment, were deprived of such honest services and instead received dishonest services.

**The Payments Directed by Jared E. Abbruzzese**

9. It was part of the scheme and artifice to defraud that, in or about early February 2004, defendant JOSEPH L. BRUNO solicited Jared E. Abbruzzese to pay him $30,000 per month as a "consultant," knowing full well that his reasonably perceived ability to influence official action would, at least in part, motivate Abbruzzese to make such payments. In response to defendant JOSEPH L. BRUNO's solicitation, Abbruzzese agreed to pay defendant JOSEPH L. BRUNO $20,000 per month.

10. It was further part of the scheme and artifice to defraud that on or about February 18, 2004, at Jared E. Abbruzzese's direction, two companies that he controlled, CTA and C&TA, entered into agreements with defendant JOSEPH L. BRUNO, in his individual

capacity, to retain defendant JOSEPH L. BRUNO as a "consultant" for $10,000 per month from each entity for twelve months.

11. It was further part of the scheme and artifice to defraud that from on or about March 2, 2004 through on or about November 29, 2004, defendant JOSEPH L. BRUNO, pursuant to the "consulting" agreements with CTA and C&TA, obtained from Jared E. Abbruzzese, through CTA and C&TA, $200,000 in the form of twenty $10,000 checks.

12. It was further part of the scheme and artifice to defraud that although the agreements with CTA and C&TA were with defendant JOSEPH L. BRUNO in his individual capacity, the payments were made to an entity that defendant JOSEPH L. BRUNO had incorporated, Capital Business Consultants. As he then well knew, Capital Business Consultants did not perform any real function; defendant JOSEPH L. BRUNO directed and utilized state employees to perform administrative, clerical, bookkeeping, and legal work related to his outside financial activities; and the use of the name Capital Business Consultants served to conceal and disguise the true source of the payments from CTA and C&TA to defendant JOSEPH L. BRUNO.

13. It was further part of the scheme and artifice to defraud that defendant JOSEPH L. BRUNO did not perform legitimate work commensurate with the payments that he received from Jared E. Abbruzzese through CTA and C&TA. Rather, defendant JOSEPH L. BRUNO accepted the payments knowing, understanding, and believing that

(a) he was not entitled to the payments; (b) the payments were made in return for official acts as opportunities arose rather than being given for reasons unrelated to his office; and (c) his reasonably perceived ability to influence official action, at least in part, motivated the making of the payments.

14. In or about December 2004, at Jared E. Abbruzzese's direction, CTA and C&TA terminated their agreements with defendant JOSEPH L. BRUNO after paying $200,000 of the $240,000 payments required by the agreements, and Jared E. Abbruzzese directed that the monthly payments continue through Motient.

15. It was further part of the scheme and artifice to defraud that on or about December 20, 2004, Motient entered into an agreement with Capital Business Consultants, JOSEPH L. BRUNO, President, to retain defendant JOSEPH L. BRUNO as a "consultant" for $20,000 per month for six months.

16. It was further part of the scheme and artifice to defraud that from on or about January 7, 2005 through on or about June 2, 2005, defendant JOSEPH L. BRUNO, pursuant to the "consulting" agreement with Motient, obtained $120,000 from Jared E. Abbruzzese through Motient in the form of six $20,000 checks.

17. In or about July and August 2004, after all six payments required by the Motient agreement had been made to defendant JOSEPH L. BRUNO, Jared E. Abbruzzese directed that the monthly payments continue through TerreStar.

18. It was further part of the scheme and artifice to defraud that on or about August 12, 2005, TerreStar entered into an agreement with Capital Business Consultants, JOSEPH L. BRUNO, President, to retain defendant JOSEPH L. BRUNO as a "consultant" for $20,000 per month for six months.

19. It was further part of the scheme and artifice to defraud that on or about August 18, 2005, defendant JOSEPH L. BRUNO, pursuant to the agreement with TerreStar, obtained $40,000 from Jared E. Abbruzzese through TerreStar, in the form of a $40,000 check.

20. On or about August 26, 2005, the new Chief Executive Officer of TerreStar terminated its "consulting" agreement with defendant JOSEPH L. BRUNO four months early, thereby reducing by $80,000 the total payments that defendant JOSEPH L. BRUNO would receive from TerreStar.

21. It was further part of the scheme and artifice to defraud that in or about April 2004, defendant JOSEPH L. BRUNO, Jared E. Abbruzzese, and others known to the grand jury entered into a partnership which owned thoroughbred race horses. Defendant JOSEPH L. BRUNO participated in that partnership through his farm, Mountain View Farm.

22. It was further part of the scheme and artifice to defraud that on or about September 1, 2005, Jared E. Abbruzzese, through Bazaguma, agreed to pay defendant JOSEPH L. BRUNO's Mountain View

Farm $80,000 for a horse when, in truth and in fact, as defendant JOSEPH L. BRUNO then well knew, (a) the horse was virtually worthless, and (b) Jared E. Abbruzzese agreed to pay defendant JOSEPH L. BRUNO this $80,000 gift to make up for the $80,000 in payments that defendant JOSEPH L. BRUNO, through Capital Business Consultants, had expected to receive from TerreStar.

23. It was further part of the scheme and artifice to defraud that on or about November 17, 2005, defendant JOSEPH L. BRUNO obtained from Jared E. Abbruzzese a check in the amount of $40,000 drawn on the account of Bazaguma, representing payment of one-half of the amount Abbruzzese had agreed to pay defendant JOSEPH L. BRUNO for the virtually worthless horse.

24. It was further part of the scheme and artifice to defraud that after on or about March 1, 2006, defendant JOSEPH L. BRUNO agreed to forgive the remaining $40,000 debt owed by Jared E. Abbruzzese for the virtually worthless horse in return for Abbruzzese's interest in the horse partnership.

25. It was further part of the scheme and artifice to defraud that defendant JOSEPH L. BRUNO did not perform legitimate work commensurate with the payments from Jared E. Abbruzzese through Motient and TerreStar, that the horse was not worth the $80,000 that Abbruzzese promised to pay for it, and that defendant JOSEPH L. BRUNO accepted the payments knowing, understanding, and believing that (a) he was not entitled to the payments; (b) the

payments were made in return for official acts as opportunities arose rather than being given for reasons unrelated to his office; and (c) his reasonably perceived ability to influence official action, at least in part, motivated the making of the payments.

26. It was further part of the scheme and artifice to defraud that the payments to defendant JOSEPH L. BRUNO at the direction of Jared E. Abbruzzese from CTA, C&TA, Motient, TerreStar, and Bazaguma ("the payments") gave Jared E. Abbruzzese greater access to the Senate Majority Leader than was available to the other citizens of the State of New York.

27. It was further part of the scheme and artifice to defraud that defendant JOSEPH L. BRUNO, in return for the payments, would and did perform official acts benefitting the interests of Jared E. Abbruzzese and/or the Abbruzzese Companies as opportunities arose including (a) in or about February 2004, defendant JOSEPH L. BRUNO directed the award of a $250,000 grant to Evident Technologies, Inc.; (b) in or about April 2004, defendant JOSEPH L. BRUNO recommended that Jared E. Abbruzzese's business partner be appointed to the board of the New York Racing Association; (c) in or about July 2005, defendant JOSEPH L. BRUNO directed the award of a $2.5 million grant to the Sage Colleges for the benefit of Evident Technologies, Inc.; (d) in or about the fall of 2005, defendant JOSEPH L. BRUNO sought the acceleration of the award of the NYRA franchise; and (e) in or about November 2005, defendant

JOSEPH L. BRUNO sought the dismissal of certain NYRA officials.

28. It was further part of the scheme and artifice to defraud that defendant JOSEPH L. BRUNO concealed from the public, his fellow senators, and other government officials that he solicited, agreed to receive, and did receive the payments directed by Jared E. Abbruzzese from CTA, C&TA, Motient, TerreStar, and Bazaguma.

29. It was further part of the scheme and artifice to defraud that defendant JOSEPH L. BRUNO filed an annual statement of financial disclosure for the year 2004 declaring in response to questions four, five, and thirteen, that he was employed by "Capital Business Consultants" as a "consultant" paid "consulting fees" for "consulting," when, in truth and in fact as defendant JOSEPH L. BRUNO then well knew, (a) defendant JOSEPH L. BRUNO, in his individual capacity, had entered into written consulting agreements with CTA and C&TA; (b) Capital Business Consultants was not a party to the agreements with CTA and C&TA; (c) use of the name Capital Business Consultants served to conceal and disguise the true source of the payments; and (d) defendant JOSEPH L. BRUNO did not perform legitimate work commensurate with the payments that he received.

30. It was further part of the scheme and artifice to defraud that defendant JOSEPH L. BRUNO filed annual statements of financial disclosure (a) for the years 2004 and 2005, failing to declare his participation, through Mountain View Farm, in a partnership with Jared E. Abbruzzese and others known to the grand jury which owned

thoroughbred race horses, and (b) for the year 2005 failing to declare that defendant JOSEPH L. BRUNO, through Mountain View Farm, received from Jared E. Abbruzzese, through Bazaguma, a gift in relation to the horse transaction.

**Mailings in Furtherance of the Scheme and Artifice to Defraud**

31. On or about the dates listed below, in the Northern District of New York, the defendant, JOSEPH L. BRUNO, for the purpose of executing the aforesaid scheme and artifice to defraud and attempting to do so, knowingly placed and caused to be placed in a post office and authorized depository for mail certain matters, documents, letters, and mailings to be sent or delivered by the United States Postal Service and/or by any private or commercial interstate carrier, to wit, checks delivered by the United States Postal Service, from and to the entities listed below.

| Count | Dates | From | To |
|---|---|---|---|
| One | 3/02/04<br>4/02/04<br>5/03/04<br>6/01/04<br>7/02/04<br>8/05/04<br>9/05/04<br>9/07/04<br>10/04/04<br>11/05/04<br>11/29/04 | Communication Technology Advisors LLC<br><br>Capital & Technology Advisors LLC | Capital Business Consultants |
| Two | 11/17/05 | Bazaguma LLC | Mountain View Farm |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

**Forfeiture Allegations**

32. Paragraphs One through Thirty-One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

33. As a result of committing one or more of the offenses charged in Counts One and Two of this Indictment, if convicted, the defendant, JOSEPH L. BRUNO shall forfeit to the United States, pursuant to, Title 18, United States Code, Sections 981(a)(1)(C), 1956(c)(7), and 1961(1), and Title 28, United States Code, Section 2461(c) his interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1341 (relating to mail fraud) as alleged in Counts One and Two.

The intent of the United States of America to forfeit such property includes a money judgment representing the total dollar amount derived from said violations.

If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party,

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant's up to the value of the forfeiture judgment.

A TRUE BILL,

Foreperson

RICHARD S. HARTUNIAN
United States Attorney

By: 
Elizabeth C. Coombe
Assistant U.S. Attorney

By: 
William C. Pericak
Assistant U.S. Attorney