**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

**v.**                                              **1:09-cr-29**
                                                    **(GLS)**
**JOSEPH L. BRUNO,**

                          **Defendant.**

---

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE UNITED STATES:**
HON. RICHARD S. HARTUNIAN            ELIZABETH C. COOMBE
United States Attorney               Assistant U.S. Attorney
445 Broadway
218 James T. Foley U.S. Courthouse
Albany, NY 12207-2924

**FOR THE DEFENDANT:**
E. Stewart Jones Law Firm, PLLC      E. STEWART JONES, ESQ.
28 Second Street
Jones Building
Troy, NY 12180

Dreyer, Boyajian Law Firm            WILLIAM J. DREYER, ESQ.
75 Columbia Street
Albany, NY 12210

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

On May 3, 2012, the United States ("government") filed a

Superseding Indictment, in which it charged defendant Joseph L. Bruno, the former New York State Majority Leader and Senator for the 43rd Legislative District, with two counts of mail fraud for allegedly engaging in a scheme to defraud New York's citizens of their intangible right to his honest services.  (*See* Dkt. No. 343.)  Pending is Bruno's motion to dismiss the Superseding Indictment.  (*See* Dkt. No. 363.)  For the reasons that follow, the motion is denied.

## II.  Background[1]

On January 23, 2009, the government filed an eight-count Indictment against Bruno, (*see* Dkt. No. 1), alleging that he committed honest services fraud in violation of 18 U.S.C. §§ 1341 and 1346 by failing to disclose various conflicts of interest that arose "from his receipt of substantial payments from individuals seeking to do business with the State [of New York]."  *United States v. Bruno*, 661 F.3d 733, 735 (2d Cir. 2011).  Six of the counts were based on Bruno's use of the mail in furtherance of the scheme to defraud, and the remaining two, on the use of wires.  (*See* Dkt. No. 1 ¶¶ 65-66.)  Relevantly, Counts Four, Five, Six and Eight, which

---

[1]  In the interest of brevity, the court summarizes only the background relevant to the instant motion.

addressed Bruno's dealings with Jared E. Abbruzzese, "were all part of the same alleged 'scheme' to defraud." (Dkt. No. 373 at 3.)  Each count, however, relied on separate mailings, none of which were repeated in any other count.[2]  (*See* Dkt. No. 1 ¶ 66.)

After a lengthy deliberation, the jury returned a split verdict on the Abruzzese counts; it found Bruno guilty on Counts Four and Eight, but acquitted him on Counts Five and Six.  *See Bruno*, 661 F.3d at 736.  Bruno was sentenced on May 6, 2010, and thereafter, appealed "'each and every part' of his conviction." (Dkt. No. 363, Attach. 11 at 2.)  While his appeal was pending, the United States Supreme Court issued its decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010), which essentially decriminalized the conduct underlying Bruno's counts of conviction.  *See id.* at 2933.  Accordingly, the government conceded that the convictions had to be vacated.  *See Bruno*, 661 F.3d at 736.

On November 16, 2011, the Second Circuit, guided by the government's stated intention of pursuing a superseding indictment,

---

[2]  For example, Count Four was based on eleven different mailings between March and November 2004.  (*See* Dkt. No. 1 ¶ 66.)  None of those eleven are repeated in Counts Five, Six or Eight, despite the commonality in the scheme and actors.  (*See id.*)

dismissed the Indictment, without prejudice. *See id.* at 740. In so doing, the Circuit reasoned that "[i]t would be preferable and fairer . . . to proceed on explicit rather than implicit charges," but nonetheless rejected Bruno's claim that there was insufficient evidence to allow for a retrial under the Double Jeopardy Clause. *Id.* at 740-45. The opinion concluded as follows: "Bruno's conviction is [vacated] and the case is [remanded] for further proceedings consistent with this opinion."[3] *Id.* at 745. As it intended to do, the government filed a two-count Superseding Indictment on May 3, 2012, which contains explicit allegations of bribery and kickbacks. (*See* Dkt. No. 343.) Although the indictments are not identical, Counts One and Two of the Superseding Indictment are based on the same conduct as Counts Four and Eight of the original Indictment. (*Compare* Dkt. No. 1, *with* Dkt. No. 343.)

### III. **Standard of Review**

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Where a trial on the ultimate

---

[3] This language is incorporated, verbatim, in the Mandate issued on December 9, 2011. (*See* Dkt. No. 340.)

issue of guilt would not aide in "determining the validity of the defense," that

defense is ripe for adjudication by pretrial motion.  *United States v.*

*Bodmer*, 342 F. Supp. 2d 176, 180 (S.D.N.Y.) (internal quotation marks

and citation omitted).  Unless "good cause" exists to "defer a ruling," pretrial

motions must be resolved before trial.  Fed. R. Crim. P. 12(d); *see United*

*States v. Williams*, 644 F.2d 950, 952-53 (2d Cir. 1981) (explaining that

"good cause" exists where the defendant's claims "are substantially

founded upon and intertwined with the evidence to be presented at trial").

## IV. **Discussion**

Bruno's motion consists of a two-part attack on the Superseding

Indictment.  He first contends that the Superseding Indictment is untimely

because it was filed more than sixty (60) days after the Second Circuit

issued its Mandate, and furthermore, does not "relate back" to the original

Indictment.  (*See* Dkt. No. 363, Attach. 11 at 4-20.)  Second, Bruno argues

that the instant prosecution is unconstitutional under the Double Jeopardy

Clause, as the government "abandoned" its current theory during the first

trial.[4]  (*Id.* at 21-22.)  Alternatively, he asserts that the government is barred

---

[4] On November 27, 2012, the court ordered Bruno to explicate his
double jeopardy argument after he raised the issue in his motion, but then,
included a footnote reserving his right to bring a motion on that ground at

from reprosecuting him based on the theory of collateral estoppel.  (*See* Dkt. No. 373 at 1-2.)  The government counters that the Superseding Indictment is not only timely—as it was filed within six months of the Circuit's decision—but also "relates back" for statute of limitations purposes.  (*See* Dkt. No. 367 at 3-20.)  And further, double jeopardy is not a bar to retrial here.  (*See id.* at 20-24; Dkt. No. 374 at 1-6.)  Resolving Bruno's motion therefore requires an answer to the following: (1) whether the government had six months or sixty days to file the Superseding Indictment; if it had six months, (2) does the Superseding Indictment "relate back" to the original Indictment; and, if so, (3) is reprosecuting Bruno barred by the Double Jeopardy Clause.  Before addressing these questions, the court first discusses the threshold issue of when, and if, the original Indictment was dismissed.

## A.    Dismissal of the Indictment

The parties' submissions evince a threshold disagreement on when, if ever, the Indictment was dismissed.  (*See* Dkt. No. 363, Attach. 11 at 4; Dkt. No. 367 at 7 n.4.)  This confusion likely stems from the perceived inconsistency between the Circuit's opinion and its Mandate.  Despite

---

a later date.  (*See* Dkt. No. 363, Attach. 11 at 21, 22 n.11; Dkt. No. 372.)

explicitly dismissing the Indictment in the body of the opinion, *see Bruno*, 661 F.3d at 740, neither the Conclusion, *see id.* at 745, nor the Mandate, (*see* Dkt. No. 340), mention the dismissal.  Both, however, include the phrase "[remand] for further proceedings consistent with this opinion." (Dkt. No. 340); *Bruno*, 661 F.3d at 745.  In such a case, the Supreme Court explained that "the direction to proceed consistently with the opinion of the court has the effect of making the opinion a part of the mandate, as though it had been therein set out at length."  *Gulf Ref. Co. of La. v. United States*, 269 U.S. 125, 135 (1925).  Thus, it is indisputable that the Circuit dismissed the Indictment[5]; the question now becomes, when?

Here, there are two possible dates—the date of the opinion, November 16, 2011, or the date the Mandate was issued, December 9, 2011.  To understand which is dispositive, one need simply compare their purposes.  Cases are decided by opinions or summary orders.  *See United States v. Rivera*, 844 F.2d 916, 920 (2d Cir. 1988).  But it is the Mandate that brings the appellate proceedings to a close and returns the case to the court from "whence it came."  *Ostrer v. United States*, 584 F.2d 594, 598

---

[5]  Although the court agrees with Bruno that "Superseding Indictment" is a misnomer, (*see* Dkt. No. 363, Attach. 11 at 4-5), the parties' terminology is nonetheless adopted for the sake of clarity.

(2d Cir. 1978).  "Simply put, jurisdiction follows the mandate."  *Rivera*, 844

F.2d at 921.  Logically then, the date of the Mandate controls, as it does,

for example, under 18 U.S.C. § 3161(h)(1).  *See Rivera*, 844 F.2d at 919-

20.  This is essentially a moot point though, because using either

November 16 or December 9, the Superseding Indictment, which was filed

on May 3, 2012, would be timely if the government had six months within

which to file it.  Accordingly, the inquiry here turns to an issue of first

impression in this Circuit—that is, whether the government has six months

or sixty days to reindict where an indictment is dismissed on appeal.

**B.**   **Applicable Period to Reindict**

As the government is well aware, (*see* Dkt. No. 363, Attach. 3 at 50),

the timeliness of the Superseding Indictment hinges on the application of

18 U.S.C. § 3288, which states, in pertinent part:

> Whenever an indictment or information charging a felony is
> dismissed for any reason after the period prescribed by the
> applicable statute of limitations has expired, a new indictment may
> be returned . . . within six calendar months of the date of the
> dismissal of the indictment or information, or, in the event of an
> appeal, within [sixty] days of the date the dismissal of the
> indictment or information becomes final . . . .

Bruno argues that "the statute's plain language makes clear that the [sixty]-

day provision applies in" this case, and thus, the Superseding Indictment

8

was untimely.  (Dkt. No. 363, Attach. 11 at 6.)  In furtherance of his position, Bruno claims that the "relevant case law," "plain meaning of the statute," "legislative history," "subsequent legislative enactment," and "procedural posture of this case" all support dismissal.  (*Id.*)  Conversely, the government, guided by principles of statutory interpretation and the legislative history of section 3288, avers that it had six months within which to file the Superseding Indictment.  (*See* Dkt. No. 367 at 3-10.)  The court agrees with the government.

"The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there."  *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (internal quotation marks and citation omitted).  Thus, absent ambiguity, the court's inquiry begins and ends with the statutory text.  *See id.*  Here, however, the statute appears to say two different things.  First, it says that the government has six months to reindict a defendant "*[w]henever* an indictment . . . is dismissed *for any reason* after the period prescribed by the applicable statute of limitations has expired."  18 U.S.C. § 3288 (emphasis added).  But it later states: "or, in the event of an appeal, within [sixty] days of the date the dismissal of the indictment or information

becomes final." *Id.* Given this apparent incongruity, the court must look beyond the text of the statute.

Although Bruno suggests otherwise, statutory interpretation does not require "judicial legislation." (Dkt. No. 363, Attach. 11 at 9.) In fact, in this case, it only necessitates a review of the legislative history of section 3288. To explain, in 1988 Congress amended section 3288 to include the sixty-day appellate clause. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7081(a)(1), 102 Stat. 4181, 4407. By using the phrase "becomes final," Congress wanted to ensure "that the government need not face the unreasonable choice [of] whether to pursue an appeal or to accept the lower court's decision and commence a reprosecution." 134 Cong. Rec. S17,360-02 (daily ed. Nov. 10, 1988) (statement of Sen. Joseph R. Biden, Jr.). The Judiciary Committee's Analysis further states: "Under the amendment, the government can appeal (after obtaining the approval of the Solicitor General, 28 C.F.R. 0.20) and, if unsuccessful, still have time in which to bring a new prosecution." *Id.* Reading the sixty-day appellate clause in context then, it is clear, as the government aptly notes, that Congress was concerned that the six-month period, which begins on the date the district court dismisses the indictment, might lapse before an

appeal from that dismissal was decided.  (*See* Dkt. No. 367 at 6.)

In spite of this legislative history, Bruno argues that the sixty-day clause serves as an exception or caveat to the six month provision because it applies "in the event of *an appeal.*"  (Dkt. No. 370 at 2-6); *see* 18 U.S.C. § 3288 (emphasis added).  Stated another way, according to Bruno, if an indictment is dismissed on appeal, the government has sixty-days to file a new indictment, but a dismissal for any other reason is governed by the six month provision.  This view is unpersuasive.[6]  First, statutory interpretation does not exist in a vacuum.  Rather, "[t]he grammatical and logical scope of a proviso . . . is confined to the subject-matter of the principal clause to which it is attached."  *Abbott v. United States*, 131 S. Ct. 18, 30 (2010) (internal quotation marks and citations omitted).  Even if the sixty-day clause was not subordinate, which it is, Bruno's reading of section 3288 "would yield some strange results," as the government would actually

---

[6]  Equally unavailing is Bruno's assertion that section 3288 contemplates an appeal, which he labels as "interlocutory," by either party. (Dkt. No. 363, Attach. 11 at 9; Dkt. No. 370 at 3, 5-6.)  First, an appeal from a district court's dismissal of an indictment would not be interlocutory. And second, the court is hard-pressed to imagine a situation where a defendant would appeal a favorable decision by the district court.

have more time to reindict if it elected not to pursue an appeal.[7]  *Greenlaw v. United States*, 554 U.S. 237, 251 (2008).  "The illogical results of applying such an interpretation . . . argue strongly against the conclusion that Congress intended [that] result[]."  *W. Air Lines, Inc. v. Bd. of Equalization of S.D.*, 480 U.S. 123, 133 (1987).

Having reviewed them all, none of the materials Bruno relies on squarely support his interpretation of the statute.  (*See* Dkt. No. 363, Attach. 11 at 5-15.)  Setting his expansive discussion of these materials aside, (*see id.*), his remaining argument is that section 3288 should be interpreted liberally in favor of repose, (*see* Dkt. No. 370 at 6-7).  Since the court disagrees that the requisite ambiguity exists with respect to this argument, further discussion is unnecessary.

In sum, the only interpretation of section 3288 that is both logical and remains true to the statutory language is the one offered by the government.  That is, "to read the [sixty]-day provision as limited to cases where a district court has dismissed the indictment," and the subsequent

_____

[7]  Under Bruno's construction, section 3288 "would give with one hand what it takes away with the other": the provision of six months in the first clause, which governs dismissals "for any reason," would be trumped by the later clause, if the dismissal resulted from an appeal.  18 U.S.C. § 3288;  *Greenlaw v. United States*, 554 U.S. 237, 251 (2008).

appeal "becomes final" after the six month period has lapsed.  (Dkt. No. 367 at 10); 18 U.S.C. § 3288; *accord United States v. Garcia*, 268 F.3d 407, 411 n.2 (6th Cir. 2001), *overruled on other grounds*, *United States v. Leachman*, 309 F.3d 377, 383 (6th Cir. 2002).  Because that was not the case here, the six month provision controls.  Compliance with the six month provision, however, is not the only requirement of section 3288.  *See, e.g.*, *Garcia*, 268 F.3d at 412.

## C.   <u>Relation Back Doctrine</u>

Bruno next argues that the Superseding Indictment "significantly broadens and amends the original Indictment," and is thus still untimely. (Dkt. No. 363, Attach. 11 at 15-20.)  The government counters that the Superseding Indictment does no such thing, as it charges violations of the same statutes, which carry the same penalties as the original Indictment. (*See* Dkt. No. 367 at 11-20.)  Again, the court agrees with the government.

"Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment."  *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976).  To be timely then, a new indictment filed pursuant to section 3288 must relate back to the original indictment.  *See United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003); *see also*

*United States v. Italiano*, 894 F.2d 1280, 1283 (11th Cir. 1990) ("The notice considerations that permit tolling in cases of *superseding* indictments apply in the case of *new* indictments as well."). Determining whether the indictment "relates back,"—*i.e.*, "does not materially broaden or substantially amend the original charges"—entails consideration of "whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *Salmonese*, 352 F.3d at 622. Standing alone, these factors are not determinative. *See id.* Instead, they are informative on the paramount question of notice, which is answered by determining "whether the original indictment fairly alerted the defendant to the subsequent charges against him and the time period at issue." *Id.*

Here, the first and fourth factors are undisputed. Given that the original Indictment and Superseding Indictment both charge Bruno with violations of sections 1341, 1346 and 2 of Title 18 of the United States Code, (*see* Dkt. No. 1 ¶ 66; Dkt. No. 343 ¶ 31), Bruno does not argue that either the statutes he is charged with violating, or the penalties he faces, have changed. (*See* Dkt. No. 363, Attach. 11 at 16; Dkt. No. 367 at 11-12.) But he does aver that the Superseding Indictment adds new elements to

the crimes charged, as well as "new factual allegations not previously

advanced."  (Dkt. No. 363, Attach. 11 at 16.)

With respect to the elements of the crimes charged, Bruno argues

that *Skilling* "changed the elements" insofar as "the government must now

prove . . . that [he] engaged in a bribery or kickback scheme to defraud by

accepting payments 'in exchange for' official actions."[8]  (*Id.* (quoting

*Skilling*, 130 S. Ct. at 2934).)  "Change," however, mischaracterizes what

---

[8]  Notably, Bruno's argument in this regard is not novel.  In fact, it is
nearly identical to that raised by the defendant in *United States v. Davis*,
714 F. Supp. 853, 864 (S.D. Ohio 1988).  There, the defendant, S. Robert
Davis, was originally convicted under the "intangible rights theory of mail
fraud."  *Id.* at 856 (internal quotation marks and citation omitted).
However, while his appeal was pending, *United States v. Davis*, 841 F.2d
1127 (6th Cir. 1988), the Supreme Court issued its decision in *McNally v.
United States*, 483 U.S. 350 (1987), in which it held that the mail fraud
statute concerned only "the deprivation of money or property."  *Davis*, 714
F. Supp. at 856 (internal quotation marks omitted).  After Davis' conviction
was reversed, the government reindicted him "under the proper theory of
mail fraud."  *Id.*

Davis challenged the new indictment, arguing that "application of
section 3288 would be unfair" because the government changed its
theory.  *Id.* at 864.  The district court rejected this argument, finding that
the only difference between Davis' indictments was "the legal theory
stated and in the clarificatory language" used to support it.  *Id.*  Relevantly,
the district court stated: "Although the government had to abandon the
intangible rights theory, it does not follow that a simple of change of theory
automatically bars reindictment.  'Allowing a second indictment to remedy
legal deficiencies present in the first is the very purpose for which section
3288 was enacted.'"  *Id.* (quoting *United States v. Charnay*, 537 F.2d 341,
354 (9th Cir. 1976)).

the Supreme Court did.  Rather, in the face of an assertion that 18 U.S.C. §

1346 was unconstitutionally vague, the Court refined the statute to

criminalize only bribery and kickback schemes.  *See Skilling*, 130 S. Ct. at

2931; *see also United States v. Bahel*, 662 F.3d 610, 631 (2d Cir. 2011)

(stating that "[i]n determining the scope and constitutionality of the honest

services statute, the Supreme Court adopted a limiting construction").

Consequently, the only "change" here is in the government's theory of what

the evidence shows; the conduct, the crime charged and the elements

thereof, remain the same.  And despite Bruno's contention to the contrary,

so too is the evidence the government relies on.  (*See* Dkt. No. 363,

Attach. 11 at 18-20.)

     Although Bruno inadvertently misstates the third *Salmonese* factor,[9]

his general assessment of the Superseding Indictment is accurate; it,

unlike the original, is tailored to the *quid pro quo* theory.  (*See* Dkt. No. 363,

Attach. 11 at 18-19.)  But it is also true, as the government notes, that each

describes the same "sequence of actions[,] . . . the same payments from

the same source, and the same two mailings in furtherance of the scheme."

_____

    [9]  The third factor looks at whether the indictments "rely on different
evidence," not whether they contain different allegations.  *Salmonese*, 352
F.3d at 622.

(Dkt. No. 367 at 12.)  Given these similarities, it can hardly be said that Bruno is unaware of the conduct he is being "called to account for." *United States v. LaSpina*, 299 F.3d 165, 179 (2d Cir. 2002); *see United States v. Gengo*, 808 F.2d 1, 3 (2d Cir. 1986) (stating that "notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges").  Although the indictments are not identical, (*see* Dkt. No. 363, Attach. 11 at 18-20), the differences between the two are limited to "the legal theory stated and in the clarificatory language" used to support it. *United States v. Davis*, 714 F. Supp. 853, 864 (S.D. Ohio 1988).  As such, the second *Salmonese* factor, like the first, third and fourth, favor the government.[10]

In sum, the question of whether the Superseding Indictment relates back to the original boils down to notice.  *See, e.g.*, *Salmonese*, 352 F.3d at 622.  "A timely, pending indictment serves this doctrine by apprising a defendant 'that [he] will be called to account for [his] activities and should prepare a defense.'" *Gengo*, 808 F.2d at 3 (quoting *Grady*, 544 F.2d at

---

[10]  Although both parties reference other portions of the record in support of their arguments, (*see* Dkt. No. 363, Attach. 11 at 17; Dkt. No. 367 at 19-20), the notice inquiry is confined to a comparison of only the two indictments, *see Salmonese*, 352 F.3d at 622.

601).  Here, the Superseding Indictment, likes its predecessor, does just

that.  Both describe, albeit with varying levels of specificity, the purported

scheme, devised by Bruno, "to defraud and to materially deprive the State

of New York and its citizens of the intangible right to his honest services . .

. [by] exploiting his official position for personal compensation and

enrichment."  (Dkt. No. 343 ¶ 7; *accord* Dkt. No. 1 ¶ 18.)  Accordingly,

Bruno's motion is denied to the extent that it seeks dismissal of the

Superseding Indictment on the basis of timeliness under 18 U.S.C. § 3288.

## D.    **Double Jeopardy**

Bruno's final assertion is that a retrial on the counts of conviction is

unconstitutional under either the abandonment or collateral estoppel

theories of double jeopardy.  (*See* Dkt. No. 363, Attach. 11 at 20-21; Dkt.

No. 373.)  The government rebuts both of these contentions, arguing

generally that Bruno's theories are either discredited or inapplicable.  (*See*

Dkt. No. 367 at 20-24; Dkt. No. 374.)  Again, the court agrees with the

government.

"The Double Jeopardy Clause of the Fifth Amendment provides:

'[N]or shall any person be subject for the same offence to be twice put in

jeopardy of life or limb.'"  *Yeager v. United States*, 557 U.S. 110, 117

(2009) (quoting U.S. Const. amend. V).  In essence, the Clause prohibits

three things: "(1) a second prosecution for the same offense after acquittal,

(2) a second prosecution for the same offense after conviction, and (3)

multiple punishments for the same offense."  *United States v. McCourty*,

562 F.3d 458, 472 (2d Cir. 2009) (internal quotation marks and citation

omitted).  But these protections are only available after the "defendant is

placed in jeopardy for an offense, and jeopardy terminates with respect to

that offense."  *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003).

Absent a terminating event, such as an acquittal,[11] the protections of the

Double Jeopardy Clause are unavailable.  *See Richardson v. United*

*States*, 468 U.S. 317, 325 (1984).

     Here, there has not been a terminating event with respect to Counts

Four and Eight of the Indictment.  It is beyond reproach "that the Double

Jeopardy Clause does not preclude the government from retrying a

defendant whose conviction is set aside because of an error in the

_____

     [11]  A finding that the evidence is insufficient to sustain a conviction is akin to an acquittal.  *See Richardson v. United States*, 468 U.S. 317, 326 n.5 (1984) (finding by the trial court); *Tibbs v. Florida*, 457 U.S. 31, 40-41 (1982) (same, on appeal).  Because the Circuit has already ruled against Bruno on this ground, the court need not address it here.  *See Bruno*, 661 F.3d at 745.

proceedings leading to conviction." *United States v. Miller*, 952 F.2d 866, 870 (5th Cir. 1992) (collecting cases). That is precisely what happened here inasmuch as the court instructed the jury on a theory of honest services fraud later overruled by the Supreme Court.[12] *See Bruno*, 661 F.3d at 739-40. Such an error does not preclude retrial under the Double Jeopardy Clause, and has not since at least 1896. *See Ball v. United States*, 163 U.S. 662, 672 (1896). In light of the extensive case law supporting this proposition, *see, e.g.*, *United States v. Tateo*, 377 U.S. 463, 465 (1964), a brief discussion will suffice.

Bruno's first theory, the so-called abandonment theory, is based on the Sixth Circuit's decision in *Saylor*, which stated that "'where the first trial ended without a verdict on the relevant charge for reasons of the

---

[12] The facts of *Miller* are indistinguishable from this case. There, the defendants were convicted of, among other things, mail fraud. *See Miller*, 952 F.2d at 869. While their appeal was pending, the Court issued its decision in *McNally*. *See id.* In light of that decision, the Fifth Circuit "reversed the defendants' convictions . . . because the indictment and jury instructions did not require the government to prove all the elements of mail fraud." *Id.* Thereafter, the government reindicted the defendants on "essentially the same" counts they were convicted of at the first trial. *Id.* After the district court denied their motion to dismiss, which was based on double jeopardy and collateral estoppel, the defendants filed an interlocutory appeal. *See id.* at 869-70. Applying the principle cited above, the Fifth Circuit held that double jeopardy did not bar the retrial there. *See id.* at 870-74.

prosecution's making, a retrial on that charge would violate the protection the Double Jeopardy Clause affords.'" (Dkt. No. 363, Attach. 11 at 21 (quoting *Saylor v. Cornelius*, 845 F.2d 1401, 1403 (6th Cir. 1988).) Notwithstanding the fact that the first trial here did not end without a verdict on the relevant counts, the abandonment theory is irreconcilable with *Richardson*. "The central concept of *Richardson* is that there is no *double* jeopardy unless the original jeopardy has *terminated*; and it is abundantly clear that a reversal for instructional error is no more a termination of jeopardy than a mistrial where the jury is unable to agree." *Miller*, 952 F.2d at 872. Though not explicitly overruled, there is little doubt that *Saylor*'s utility on this point has ceased. *See, e.g.*, *United States v. Wittig*, 575 F.3d 1085, 1101-02 (10th Cir. 2009) (rejecting *Saylor* as inconsistent with *Richardson*). It follows that Bruno's abandonment argument, as it relates to the Double Jeopardy Clause, is rejected.

His second argument regarding collateral estoppel is similarly unavailing. (*See generally* Dkt. No. 373.) Essentially, Bruno claims that because he was acquitted on Counts Five and Six—which, like Counts Four and Eight, concerned his dealings with Abbruzzese—and all of the counts were part of the same scheme to defraud, "it must be that the jury's

acquittals on Counts [Five] and [Six] were based on a factual conclusion that [he] did not possess the requisite intent to defraud." (*Id.* at 3-7.) Relying on the Court's decision in *Yeager*, and *United States v. Coughlin*, 610 F.3d 89 (D.C. Cir. 2010), Bruno argues that the government is collaterally estopped from reprosecuting him. (*See id.*)  Simply put, the court disagrees.

To explain, neither *Yeager* nor *Coughlin* involved a retrial on counts that the defendant was previously convicted of; instead, both cases dealt with retrials after the jury acquitted the defendant on one or more counts, and hung on the remaining. *See Yeager*, 557 U.S. at 112-16; *Coughlin*, 610 F.3d at 93-96.  In such cases, the Court instructs that hung counts are a "nonevent" and are removed from consideration. *Yeager*, 557 U.S. at 119-20.  Courts are then left to consider whether the government—in order to sustain a conviction on the previously-*hung* count that it now seeks to retry—must relitigate an "issue that was necessarily decided by a jury's acquittal in a prior trial."[13]  *Id.* at 119.  The fact that the jury acquitted Bruno

---

[13]  Assuming *arguendo* that *Yeager* applies to this case, the result would be the same.  Citing its decision in *Ashe v. Swenson*, 397 U.S. 436 (1970), the Court stated that in order "[t]o decipher what a jury has necessarily decided, . . . courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and

on Counts Five and Six could potentially affect the government's ability to retry him on Count Three, the only count the jury did not reach a verdict on. It has no bearing, however, on the government's right to reprosecute him on Counts Four and Eight.  Accordingly, collateral estoppel does not bar a retrial here.

Though sufficient to conclude by simply stating that Bruno's motion is denied to the extent that it seeks dismissal of the Superseding Indictment on the basis of double jeopardy—which it is—the potential consequence of the court's decision on this ground compels one final observation.  As the court noted in its previous Order, (*see* Dkt. No. 372 at 2), "the collateral order doctrine creates an exception for the denial of a pre-trial motion to dismiss criminal charges on double jeopardy grounds."  *United States v.*

_____

other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."  *Yeager*, 557 U.S. 119-20 (quoting *Ashe*, 397 U.S. at 444).  The inquiry need not be hypertechnical though; rather it "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."  *Ashe*, 397 U.S. at 444.  Applying that framework here, it is perfectly conceivable that the jury, in evaluating the mailings that formed the basis of each count, found that the letters referenced in Counts Five and Six did not evidence an intent to defraud, while the ones in Counts Four and Eight did.  (*See* Dkt. No. 1 ¶ 66.)  The fact that the jury was explicitly instructed to consider each count separately only bolsters this conclusion.  (Tr. at 4112:7-8, Dkt. No. 334.)

*Basciano*, 599 F.3d 184, 196 (2d Cir. 2010) (internal citations omitted).

While this exception limits the scope of an interlocutory appeal, *see Abney v. United States*, 431 U.S. 651, 662-63 (1977), one is nonetheless permissible.  However, in the court's view, interlocutory review is unnecessary in this case.

To be clear, this is not an admonishment of either Bruno or his counsel in the event an interlocutory appeal is filed.  Such is Bruno's right under both Supreme Court and Circuit precedent, and it is his attorneys' sworn duty to zealously pursue his interests.  Indeed, counsel for both parties here have consistently demonstrated exemplary advocacy on behalf of their respective clients, and undoubtedly will continue to do so.  That being said, the exception is too broad insofar as it enables a defendant to delay the timely administration of justice by simply raising double jeopardy.

Admittedly, the Supreme Court already considered this:

[O]ur holding may encourage some defendants to engage in dilatory appeals . . . .  However, we believe that such problems of delay can be obviated by rules or policies giving such appeals expedited treatment.  It is well within the supervisory powers of the courts of appeals to establish summary procedures and calendars to weed out frivolous claims of former jeopardy.

24

*Abney*, 431 U.S. at 662 n.8.  Despite this acknowledgment, the Supreme

Court, in *Richardson*, implicitly recognized that such rules—which do exist

and should be applied in this case—are insufficient.  In reaffirming that

mistrials were not jeopardy-terminating events, the Court stated:

> It follows . . . that claims of double jeopardy such as petitioner's
> are no longer 'colorable' double jeopardy claims which may be
> appealed before final judgment. A colorable claim, of course,
> presupposes that there is some possible validity to a claim. Since
> no set of facts will support the assertion of a claim of double
> jeopardy like petitioner's in the future, there is no possibility that
> a defendant's double jeopardy rights will be violated by a new
> trial, and there is little need to interpose the delay of appellate
> review before a second trial can begin.

*Richardson*, 468 U.S. at 325-26 n.6 (internal citations omitted).  How these

seemingly inconsistent observations by the Court are to be interpreted is a

question best resolved by those entrusted with the duty of reviewing such

appeals.  In so answering, it may be necessary to consider what

mechanism, if any, is available to ensure that the claims presented for

interlocutory review are at least "colorable."

## E.    Summary

In sum, Bruno's motion is denied in all respects.  However, because

this denial includes a rejection of Bruno's double jeopardy arguments, he is

entitled to seek interlocutory review of that part of the court's decision.

Should he elect to do so, Bruno must file his notice of appeal within

fourteen (14) days of the date of this Memorandum-Decision and Order.

*See* Fed. R. App. P. 4(b)(1)(A).  Finally, the parties are directed to contact

this court's Courtroom Deputy within five (5) days of the date of this

decision in order to schedule either an in person or telephonic conference

to further discuss the deadlines established at the November 14, 2012

status conference.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Bruno's motion to dismiss the Superseding

Indictment (Dkt. No. 363) is **DENIED**; and it is further

**ORDERED** that should Bruno seek to appeal the portion of this

decision denying his motion on the basis of double jeopardy, he must do so

within fourteen (14) days of the date of this Memorandum-Decision and

Order; and it is further

**ORDERED** that the parties are directed to contact this court's

Courtroom Deputy within five (5) days of the date of this decision in order

to schedule either an in person or telephonic conference to further discuss

the deadlines established at the November 14, 2012 status conference;

and it is

ORDERED that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

December 11, 2012
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court